In the Matter of the Estate of Anne Lambie, Deceased. John H. Thomas and Charles Cameron, Proponents, v. Neil McMillan, Contestant.

*Will—Evidence—Revocation — Spoliation — Matters within knowledge of decedent.*

1. The admissions of a sole devisee, that the will through which he claims has been revoked by a later will, are admissible as against his representatives, who seek to probate the earlier will.

2. Such admissions are sufficient, if believed, to establish the fact of revocation, if the jury find that the revoking will has been fraudulently suppressed or destroyed, in which case a legal presumption arises that it was legally drawn and executed,

97 MICH.—4.

| 97 | 49 |
| 98 | 192 |
| 97 | 49 |
| 103 | 26 |
| 97 | 49 |
| 115 | 353 |
| 97 | 49 |
| 118 | 382 |
| 97 | 49 |
| 124 | 637 |
| 97 | 49 |
| s56NW | 223 |
| 130 | 90 |
| 97 | 49 |
| s56NW | 223 |
| 133 | 463 |
| 97 | 49 |
| 141 | ⁴517 |
| 97 | 49 |
| j144 | ¹619 |

notwithstanding How. Stat. § 5793, which requires such an instrument to be formally executed.

3. After testimony has been introduced tending to show the revocation of a will by a later one, evidence of the declarations of the testatrix, tending to show a change of mind as to the disposition of her property, and an actual alteration thereof, is admissible, in proceedings to contest the earlier will, to corroborate testimony as to the existence and contents of the later will; citing *In re Hope's Appeal*, 48 Mich. 518.

4. Where the probate of a will is contested on the ground of its revocation by a later will, in which the contestant was named as devisee, and the existence of which is sought to be established by parol testimony, it is competent for the contestant to testify to the statements of the testator as to the execution of the revoking will, but not to those of the devisee in the first will, which is sought to be probated by his executors.

5. Evidence of the mental and physical condition of the devisee in a will, which is claimed to have been revoked by a later one, for a period before his death, during which he lived with his devisee, and had possession, as claimed, of both wills, is admissible, in a contest over the probate of the earlier will, to support the claim that the revoking will had been destroyed by his devisee, by showing an opportunity for such spoliation.

Error to Wayne. (Hosmer, J.) Argued March 10, 1893. Decided October 2, 1893.

Appeal from the probate of a will. Proponents bring error. Reversed. The facts are stated in the opinion.

*Charles C. Stewart* and *John Galloway*, for appellants.

*William J. Gray* (*C. M. Swift*, of counsel), for contestant.

HOOKER, C. J. Francis and Anne Lambie were husband and wife, residing in Detroit. Neil McMillan was a nephew of Anne Lambie, and resided with these parties from childhood. In September, 1864, Anne Lambie executed a will, giving all of her property to her husband, Francis Lambie, if he should survive her. Anne Lambie died July 3,

1886. Francis Lambie died on March 3, 1891, having taken no steps to probate this will, though it had been continuously in his possession from the time of Anne's death. During this period he had possession of her property, which he used as though it were his own. Shortly before his death, Francis went to Windsor, Ont., where he lived with his brother James. On March 14, 1891, a will purporting to have been executed by Francis Lambie on February 9, 1891, was filed for probate in Wayne county, Michigan. This will named Charles Cameron and John H. Thomas as executors, and gave to James Lambie all of the testator's property. It was admitted to probate, and the parties named were appointed executors, and accepted the trust. Subsequently the will of Anne Lambie was produced, and admitted to probate by said court. Upon appeal of Neil McMillan this order was reversed in the circuit court, and the cause is now brought here by John H. Thomas and Charles Cameron, executors of the last will and testament of Francis Lambie, deceased, proponents and appellants, into whose hands James Lambie put this will.

Upon this will of Anne Lambie depends the title of Francis Lambie to the property which the will of Francis Lambie gives to James. The contest of Neil McMillan is based upon an alleged revocation of Anne Lambie's will of 1864, by a will which it is claimed that she made later, whereby she gave her property to Neil McMillan. To establish the revoking will, which was not produced, contestant gave evidence tending to show that the papers of Francis Lambie came to the hands of James Lambie, Cameron, Thomas, and possibly others, who are alleged to have destroyed or suppressed such will. Upon the other hand, proponents contend that no proper proof was offered from which the existence of such will can be said to have been

established. The only testimony offered upon such point was:

1. Testimony of witnesses to whom Anne Lambie had stated that she had willed her property to Neil McMillan after Francis should be done with it.

2. Statements of Francis Lambie to the same effect, made to Neil McMillan and others.

3. Testimony of Neil McMillan that Francis had shown to him a writing, stating that it was Anne Lambie's will, giving him (Neil) the property when he (Francis) should be done with it, and that he put the will in a tin box, from which he had taken it, and in which he kept his papers, which tin box was afterwards traced to the possession of proponents, and which contained the will of 1864.

4. Testimony tending to raise the presumption that James Lambie and the other parties concealed such revoking will, in the nature of evidence that they endeavored to conceal his papers, and acted in a suspicious manner, only consistent with guilt.

It is contended that the statements of Anne Lambie were not admissible for any purpose; also that the statements of Francis Lambie were not competent to show that Anne had made such a will, being hearsay; also that the testimony of Neil McMillan, as to statements and transactions made by or participated in by either Anne or Francis, was inadmissible under the statute excluding testimony of parties as to transactions equally within the knowledge of deceased. The statements of Anne Lambie served the double purpose of showing the existence of a will, and its contents, and the same may be said of the statements of Francis. In the absence of these statements of one or both, there would have been no proof that Anne ever made any will, except that of 1864. It being conceded that the will of 1864 was genuine, it follows that it must be the last will of Annie Lambie, unless some evidence was produced that might legally tend to show that a later one was made.

Contestant's brief asserts that the existence of such will is proved:

1. By evidence of Duncan Stewart that Mr. and Mrs. Lambie treated contestant as an adopted son, which was a matter of common knowledge; that Mrs. Lambie had told him, in Mr. Lambie's presence, that she and Mr. Lambie had made a will, that the longest liver was to have the property, and that at their death it was to go to Neil.

2. By similar evidence from Dr. A. J. B. Jenner, that both Anne and Francis Lambie had made similar statements, that her brothers George and Charles McMillan knew all about it, and that the will was in their safe; that subsequentl to that talk Mrs. Lambie was physically unable to have gone to the store of her brothers to get the will, and that both of such brothers are dead.

3. By testimony of Mrs. Woodworth, with whom Francis Lambie boarded after his wife's death, that he had made similar statements to her.

4. By testimony of Neil McMillan, the contestant, that he was an adopted son of the parties; that they both always told him that he would inherit their property; that it was well understood in the family that Mrs. Lambie owned the Washington-avenue property; that Mrs. Lambie, in 1886, at Minneapolis, told him that she had made a will leaving him the property, and that it was in the tin box in G. & R. McMillan's store; that in December, 1886, after his aunt's death, witness was at the Russell House, and Francis Lambie brought the tin box there from said store, to give witness some of his papers; that Francis opened the box, and went through the papers, holding them up and calling them out; that he finally held up, opened out, Anne Lambie's will, saying: "This is your aunt's will, giving you the property after I am gone." The will was put back into the box. It was a half sheet. He did not read the will, and could not state the date, nor the witnesses to it, nor that it was a will, in fact.

5. By testimony of Robert McMillan that Francis Lambie had kept in his store a tin box, which he took away after the death of George McMillan, in 1889.

6. The 1864 will was in Francis' possession, and was found after his death in the tin box. The fact that it was not offered for probate by him, contestant claims, raises a presumption that he knew of the existence of a revoking will.

The will of 1864 exists. Its validity is admitted, subject to the claim of its revocation. Presumptively, then, it is the last will of Anne Lambie. Before probate can be denied, it must be shown that a subsequent will was made.

Can the existence of this will be proved by the statements of Anne Lambie? Upon the question of the admission of the declarations of the testatrix for the purpose of establishing the fact that she made a given will, the cases are in conflict. In our own State, while declarations of a decedent have, in some instances, been held admissible, so far as observed the Court has carefully excluded the implication that they were receivable for such purpose. As we do not find it necessary to decide the question, we express no opinion upon it. We think the statements of Anne Lambie were admissible as to the contents of the will, after proof tending to show its existence was adduced.

Can the declarations of Francis Lambie be proved for such purpose? Here, too, some conflict is found in the books, some holding that a devisee's admission can be proved against the will in all cases, and others maintaining that it is permissible only where he alone is interested in the probate of the will, upon the ground that another should not be prejudiced by such statements, which, as to him, would be hearsay; but all agree that when he alone is interested such proof may be received. In this case Francis Lambie alone profited by the will which his representatives seek to probate. He was their privy, and admissions by him of the existence of a later and revoking will are clearly admissible, and are alone sufficient, if believed, to establish the fact, in a case where a jury can find that the will is fraudulently suppressed. The only interest that proponents have in this will comes through Francis Lambie, the sole devisee named in it, and they are bound by his declarations. *Durant v. Ashmore,* 2 Rich. 184; *Lillie v. Lillie,* 3 Hagg. Eccl. 184; 2 Greenl. Ev. § 690; *Atkins*

*v. Sanger,* 1 Pick. 192; *Thompson v. Thompson,* 13 Ohio.
St. 356.

It being determined that there was evidence of the
existence of a will, or a paper called a will, can it be said to
have been sufficiently proved? The statute (How. Stat.
§ 5793) provides that—

"No will, nor any part thereof, shall be revoked unless
by burning, tearing, canceling, or obliterating the same,
with the intention of revoking it, by the testator, or by
some person in his presence and by his direction; or by
some other will or codicil, in writing, executed as pre-
scribed in this chapter; or by some other writing, signed,
attested, and subscribed in the manner provided in this
chapter for the execution of a will."

The evidence in the case falls short of establishing the
existence of such a writing, except as it may be presumed
under the maxim, "*Omnia præsumuntur in odium spolia-
toris.*" There was some evidence tending to show that the
second will of Anne Lambie was in the possession of
Francis Lambie, and that it came to the hands of the
proponents, warranting the inference that it has been
suppressed or destroyed. If from this evidence the jury
found such paper destroyed, the law permits the presump-
tion that it was legally drawn and executed, notwithstand-
ing the terms of the statute, which requires the revoking
instrument to be formally executed. If the will be lost,
secondary evidence may be given of its contents. If sup-
pressed or destroyed, the same is true; and, if necessary,
the law will prevent the perpetration of a fraud by per-
mitting a presumption to supply the suppressed proof.
We cannot assent to the proposition that the statute is so
rigid as to be the wrong-doer's most effective weapon. The
misconduct once established to the satisfaction of the jury,
it is no hardship to the wrong-doer to say, "Produce the
evidence in your possession, or we will presume that your
opponent's contention is true." When one deliberately

destroys, or purposely induces another to destroy, a written instrument of any kind, and the contents of such instrument subsequently become a matter of judicial inquiry between the spoliator and an innocent party, the latter will not be required to make strict proof of the contents of such instrument in order to establish a right founded thereon. Broom, Max. 940. This rule was applied in *Anderson v. Irwin,* 101 Ill. 411, 414, in a case of a burned will. In this case the objection was made that it was necessary to prove the statutory requisites, but the court say:

"The law is intended to be practical in its application to the varied transactions and circumstances which go to make up the affairs of life, and which are constantly giving rise to legal controversies that have to be settled in courts of justice.   *   *   *   The law requires in proof of a fact the best attainable evidence. The counterpart of this rule is, the law is always satisfied where the fact sought to be established has been proven by the best evidence of which, in its nature, it is susceptible.   *   *   * The instrument in controversy having been destroyed without the fault of the defendant in error, and with the connivance of a part, if not all, of plaintiffs in error who interposed any defense in the court below, and there not appearing to be any copy of it in existence, it would be equivalent to denying the complainant relief altogether to require her to prove the very terms in which it was conceived. All that could reasonably be required of her under such circumstances would be to show in general terms the disposition which the testator made of his property by the instrument, that it purported to be his will, and was duly attested by the requisite number of witnesses. This was all fully and clearly shown."

In *Brown v. Brown,* 10 Yerg. 84, where a will was claimed to have been suppressed, it was held proper to show the aversion of the testator to the person benefited by suppression, and declarations of intention not to give such person anything, as circumstances tending to show that the testator did not destroy the will.

"Heir at law destroys the will whereby the estate was, as it was alleged, devised to the plaintiff. The heir at law was decreed to convey the estate to the plaintiff and his heirs. A trial was denied whether there was such a will as set out in the bill." *Woodroffe v. Wood*, 1 Dick. 32.

In *Pomeroy v. Benton*, 77 Mo. 64, 86, it is said that the rule *omnia præsumuntur in odium spoliatoris* can be applied before secondary evidence has been introduced, for, if such evidence is at hand, there is no necessity for the application of the rule.

The doctrine is a broad one, and extends to cases of corrupt suppression of evidence generally. *Dalston v. Coatsworth*, 1 P. Wms. 731; *Bowles v. Stewart*, 1 Sch. & Lef. 225. See, also, upon this subject, *Anonymous*, 1 Ld. Raym. 731; *Harwood v. Goodright*, 1 Cowp. 87; *Blade v. Noland*, 12 Wend. 175; 1 Greenl. Ev. § 37; 1 Phil. Ev. 602, and cases cited. We therefore find no difficulty in sustaining the trial court in the proposition that there was a question to go to the jury.

We will next inquire concerning some of the rulings upon the trial. It has already been said that declarations of Anne Lambie were not essential to prove the existence of her will, other evidence being produced tending to prove that fact; but error is assigned upon the introduction of such statements, and it becomes necessary to refer to them again. When proof has been introduced tending to show that a certain will has been made revoking a former will, evidence of declarations made by the decedent, tending to show a change of mind in regard to the disposal of his property, and an actual alteration thereof, is admissible, in proceedings to contest his will, to corroborate the testimony of a witness as to the existence and contents of a later will. *In re Hope's Appeal*, 48 Mich. 518. The existence and contents of a later will are shown by evidence of Francis Lambie. Declarations of Mrs. Lambie that she had changed

her will, and left all to her nephew when Francis should be through with it, corroborate such testimony, and the circuit judge committed no error in admitting them. See, also, *Sugden v. Lord St. Leonards,* L. R. 1 P. Div. 154.

Neil McMillan, the contestant, was allowed to testify in relation to conversations with both Anne and Francis Lambie. This testimony is said to have been inadmissible, under the statute designed for the protection of estates of deceased persons. As to conversations with Anne Lambie, the testimony was admissible. *Penny v. Croul,* 87 Mich. 15; *Brown v. Bell,* 58 Id. 58; *Schofield v. Walker,* Id. 96; *Lautenshlager v. Lautenshlager,* 80 Id. 285. But, in relation to statements of Francis Lambie, we think the statute should apply. The proceeding was prosecuted by proponents, who are the representatives of Francis Lambie. It was to determine whether such estate was or was not the owner of valuable property. Upon this Neil McMillan, as contestant, joined issue, and was permitted to testify that Francis had admitted that this claim was invalid. Had Neil been a claimant against the estate of Francis for never so small a sum, or in replevin or in ejectment for the property in dispute, his testimony would have been within the statute. How is it any the less so when the representatives of Francis institute a proceeding to settle the same question? This proceeding is prosecuted by a representative of a deceased person. It is defended by Neil McMillan. Property claimed to belong to the estate of Francis Lambie is the stake. Under the strict letter, as well as the spirit, of the statute, this testimony should have been excluded.

Some other questions are presented by the record. Evidence of the mental and physical condition of Francis Lambie for a period before his death was admissible, as throwing light upon the opportunity for spoliation, and tending to account for a disregard of his former intentions

and his wife's wishes. The relation of Neil to Francis and Anne Lambie, and his explanation of his failure to require evidence of his rights during the life of Francis, were proper sidelights upon the controversy.

The judgment will be reversed, and a new trial ordered.

The other Justices concurred.