BURKE *v.* NAPOLEON HILL COTTON COMPANY.

## Opinion delivered April 8, 1918.

1. FACTORS AND BROKERS—DUTY TOWARD PRINCIPAL.—A factor is required, in conducting the affairs of his principal, to exercise that measure of care and diligence which a prudent business man would exercise in the management of his own affairs. Where a factor has a discretion in selling, he is not liable for errors in judgment.

2. FACTORS AND BROKERS—DUTY OF CARE AND DILIGENCE—JURY QUESTION.—Appellant shipped peas to appellee, a commission merchant, to sell; the market declined, and the peas were sold at a loss. Appellee brought an action for the balance of the advance made by him to appellee. *Held*, the issue of whether appellee had exercised the care and diligence required of a factor should have been submitted to the jury.

3. FACTORS AND BROKERS—LOSS—DUTY TO MINIMIZE DAMAGE.—Where a factor holds goods of his principal for sale, and it becomes evident that a further holding of the same will result in serious damage, it is the duty of the factor to exercise ordinary care to secure both his principal and himself from loss, or at least to minimize any loss as far as possible.

Appeal from Pike Circuit Court; *J. S. Lake,* Judge; reversed.

*Otis Gilleylen* and *J. C. Pinnix,* for appellant.

1. It was error to direct a verdict. There was a question of fact for a jury under proper instructions. The right to a trial by jury is inviolate under the Constitution. Const., art 7, § 23; 73 Ark. 561; 76 *Id.* 520.

Where there is any evidence tending to establish an issue in favor of the party against whom the verdict is directed, it is error to take the case from the jury. 63 Ark. 94; 77 *Id.* 556; 36 *Id.* 451; 35 *Id.* 146; 62 *Id.* 63; 84 *Id.* 57; 89 *Id.* 368; 96 *Id.* 368. See also 39 Ark. 491; 99 *Id.* 490; 97 *Id.* 438; 101 *Id.* 376; 105 *Id.* 213; 96 *Id.* 379; 98 *Id.* 334, and many others.

2. Appellee was a factor, the agent of appellant, and must act in good faith and use due care. These goods were consigned with specific instructions. 3 N. Y. 78; 12 N. H. 239; Tiffany on Agency, 105; 59 Iowa, 596; 3 Wash. 350; 2 Ill. App. 180; 36 Minn. 214; 52 Miss. 7.

3. It was the plain duty of appellee to store and take good care of the peas. A jury should have been permitted to say whether appellee used due care and skill. 37 Ark. 164-193; *Ib.* 580. It is evident that appellee did not act faithfully and judiciously. A better price could have been obtained. Due diligence was not used. Wharton on Agency, etc., par. 778-9.

4. Factors are required to act with reasonable skill and diligence. 10 Gray, 362; 15 |Wend. 341; 57 Ala. 145; 5 Munf. 34; 1 Gall. 360; 10 Wall. 141; 5 Dillon, 438; Wharton on Agency, etc., par. 767.

5. While the general rule is that a factor is bound by his instructions, yet one who has made advances has a right to sell enough at least to reimburse him for his advances. See 14 Pet. 479; 28 Md. 529; 7 Baxt. 476; 20 Fed. 611; 16 *Id.* 516; 24 Md. 131; 1 Parsons, Eq. Cas. 359; 3 Baxter, 47; 10 Heisk. 199; 10 Wall. 141; 44 Fed. 845; 14 Cyc. 126-7.

*A. P. Steel* and *S. S. Langley,* for appellee.

The facts here were all sworn to by witnesses for appellee and were not denied by appellant. There was only a general demand in the answer, which is no denial. 32 Ark. 105; 46 *Id.* 132; 50 *Id.* 562.

2. There was no controversy—nothing for a jury. 89 Ark. 24; 97 *Id.* 438. There was no evidence to support a defense. 57 Ark. 461. A verdict was properly directed.

STATEMENT OF FACTS.

This action was brought by the appellee against the appellant to recover a balance alleged to be due the appellee from the sale of a consignment of peas. The appellee alleged that it was a corporation of Missouri, with its principal place of business in St. Louis; that it was engaged in the business of buying and selling of cotton and other produce on commission; that appellant on April 21 shipped appellee a car load of stock peas on which appellee advanced the sum of $660.60; that under the terms of the contract the peas were to be held by the appellee and marketed and the account of the sales rendered to the

appellant; that appellee sold the peas for the best price obtainable, and, after deducting the expense of the sale including insurance, interest and storage, the amount received for the consignment lacked $374.01 of paying the appellee the amount already advanced. The appellee prayed judgment for this sum.

The appellant answered and made his answer a cross-complaint, in which he alleged that appellee was a factor and commission merchant. He alleged that he made a consignment to appellee of 44,000 pounds of stock peas of the value of $1,100; that said consignment was accompanied by and subject to a sight draft for $660 as an absolute and unconditional payment on said consignment, and was further accompanied by and subject to instructions as to price for which said peas were to be sold, and a limit fixed by appellant to govern and effect the price at which appellee as such factor might sell said peas; that the directions and instructions were reasonable and that appellee by the using of reasonable diligence might and should have obtained that price for the peas; that appellee then and there agreed, and it was its duty to furnish storage and to use due care and diligence in storing said consignment; that appellee was negligent in this respect and by reason thereof the peas became much wasted and deteriorated in value, and in consequence were afterwards sold by appellee for less than consignment would have produced had the appellee exercised due care and diligence in storing said peas and in selling the same. Appellant alleged that by the exercise of reasonable diligence appellee could have obtained for said consignment of peas the sum of $1,100. Appellant prayed for judgment for the balance alleged to be due him after allowing appellee credit for the $660.60.

The appellee was a commission merchant or factor doing business in St. Louis, Mo. The appellant had a mill, gin and farm and was engaged in the feed business at Glenwood, Ark.

The contract between the appellant and appellee is evidenced by the correspondence beginning with the letter

written by the appellant to the appellee on March 6, 1916, and ending with a letter from the appellee to appellant November 22, 1916.

The correspondence shows that on March 21, 1916, appellant shipped to appellee a car load of stock peas containing 44,000 pounds. In his letter notifying appellee of the shipment appellant stated that he had drawn sight draft for ninety cents per bushel, and added "do the best with them you can and sell as soon as you think best. Keep me posted as to prices."

Appellee replied, stating draft attached to bill of lading was presented and paid yesterday. "Will keep you advised as to prices and will sell when we get favorable offers."

A letter of April 7 from appellant to appellee says "with reference to your car of peas we understand it is your desire that we sell the peas out along when we get a buyer at a good price. We don't think they would bring, if offered for sale today in a round lot, $1.25 or $1.35 per bushel, but by selling in lots, as we find buyer who needs any, we hope to do better for you."

In reply appellant says: "I would like for you to sell them as soon as you can get reasonable price for them and you may sell in small lots if you think best, but clean them up as soon as you can, as I am needing the money I have in them."

In the next letter appellee asked appellant to "give us some idea about what price you think they ought to bring, and with which you would be satisfied, we might be able to sell altogether."

Appellant replied, "I think I should have about $1.30 or $1.35 net to me. Do the best you can with them, and I will be satisfied with same."

In a letter of May 12, appellee tells appellant that it will be impossible for the peas to net him $1.30 or $1.35, and says: "If it is possible for us to get $1.40 all round for the lot of peas in St. Louis shall we sell? It is getting to the season where there will be some weevil, and if held beyond that time you would have to put in cold storage,,

which would cost ten to fifteen cents per bushel. The pea market has been disappointing to the dealers here as many have them on hand which cost them $1.60 to $1.70. As you know, an advance may come at any time, provided other crops fail, and which they are doing, and the ground is replanted in stock peas, which is the last thing that can be planted. We shall be glad to have an early reply.''

There was a reply to this letter but the same is not in the record. The next letter from appellee to appellant on May 15 states: ''Your favor of the 13th at hand. When we get $1.40 per bushel, round for your peas, will sell same. May conclude to sell them separately; it depends upon what the market does the next few days.''

On June 16 appellee wrote appellant, advising him that the bottom had dropped out of the market and said: ''If you conclude to hold the peas, they should be put in cold storage. The charge would be three cents per bushel for each month, including the cost of loading and unloading. The insurance would be about eighty-four cents per annum on $100. The seed dealers here are buying peas round $1 to $1.05, putting them in cold storage and holding them.''

Appellant made no reply to this letter, but on July 25 wrote asking the appellee to ship ten bushels of early triumph potatoes.

Appellee replied on July 28, saying that it could not get the potatoes. Appellant wrote July 31, thanking appellee for its efforts to get him the potatoes, but said nothing in regard to the peas.

On September 1 appellee wrote appellant advising him that his peas ''has become infested with weevil and we are compelled to sell same at $1 per hundred. Your favor of May 13 advised us to sell them when we could get $1.40 per bushel. There has been no time since that date that we could do so. We wrote you on May 12 that we could sell at $1.35 round, and held same on your instructions of May 13. June 16 we wrote you advising that peas should be put in cold storage if you continued to hold during the summer months—telling you at that

time what the charges would be. As we did not receive any reply to this letter, we did not incur this additional expense.'' In this letter appellee included its account of sale together with a statement showing a balance due it of $368.25.

The last letter of November 22, 1916, simply contains a statement showing the appellant's account with appellee charging him with $660.60 advanced with interest and crediting him with the proceeds of the sale of the peas showing a balance due appellee of $374.01.

The purchaser of the peas testified ''the peas were in horrible condition, in a few days they would have been entirely worthless. If the peas had not been defective, at that time of the year, they would have been worth one dollar and five cents ($1.05) per bushel in St. Louis. There was a declining pea market there and elsewhere during the spring and summer of 1916.''

The court instructed the jury upon the above testimony to return verdict for the appellee for the full amount sued for. This was done. The judgment was entered in favor of the appellee for that sum. From that judgment is this appeal.

WOOD, J., (after stating the facts). It was a question for the jury under the evidence in this case to determine whether or not the appellee had exercised ordinary care to protect and preserve the peas which had been consigned to it.

The appellee as factor or commission merchant was an agent of the appellant to sell on commission the goods which appellants had consigned to it. Appellee was bound to act in good faith and to use reasonable or ordinary care.

(1) ''The measure of care and diligence,'' says Ruling Case Law, ''required of a factor in conducting the business of his principal is that which a prudent business man would exercise in the management of his own affairs, and he is not liable for an error in judgment

where his instructions give him discretion as to selling."
11 R. C. L., § 17, p. 766.

Mr. Tiffany says: "Like other agents, a factor is bound to exercise skill, care and diligence, to exercise good faith, to account, and to obey instructions of his principal. He may depart from his instructions, however, if such a course is justified by the occurrence of an unforeseen emergency, or if obedience would impair his security for advances." See Tiffany on Agency, § 48, p. 223; § 105, p. 403.

In *Maloney, Receiver, v. Jones-Wise Commission Co.,* 117 Ark. 180, we held (quoting syllabus): "By the common law a factor and commission merchant has a lien upon the goods of his principal in his hands as security for all advances made to such principal in connection with the goods consigned." He is entitled to retain the goods in his hands "until his advances, expenses and commission are repaid." Wharton on Agency, § 767, p. 514.

(2-3) Now, applying the above principles to the facts of this record, it will be seen that the appellee started out by soliciting the consignment of peas from appellant telling him that it was prepared to store them and take good care of them, and that they were then selling at $1.50 per bushel, and as appellee believed would go higher. Later on they advised him that the market had declined so that they would not sell for more than $1.35 per bushel, but telling him that it hoped to do better. Appellant's letter in reply informed the appellee that he would like for it to sell the peas as soon as it could get a reasonable price for them, and leaving it to the judgment of appellee to do the best it could. In answer to a letter from appellee requesting appellant to name a specific price that would satisfy him, he replied that he thought he should have about $1.30 or $1.35 per bushel, but he concluded his letter by telling the appellee "do the best with them you can and I will be satisfied with same." In the letter of May 12 appellee asked appellant "if it is possible for us to get $1.40 all around for the lot of peas in St. Louis shall we sell?" It notified him that the weevil season was coming

on and that if the peas were held they would become infested, etc. The answer to that letter appellee fails to produce, its secretary stating that he was unable to find it.

We judge from the letter in reply to it that the appellant answered appellee's question in the affirmative, that he was willing to take $1.40 per bushel round for his peas, but in the absence of the letter it can not be seen what further statements or explanations appellant may have made. For aught that appears to the contrary, this letter on the 13th of May may not have contained positive instructions to appellee not to sell for less than $1.40, and not only stated that he was willing for them to sell at that price but may have contained the statement as did the former letters for appellee to do the best it could and he would be satisfied.

At any rate since appellee had this letter in its possession and fails to produce it, unfavorable inferences against the appellant can not be indulged as to any contents of the letter. Taking the whole correspondence, it was a question for the jury to say whether or not the appellant had given appellee positive instructions not to sel⸀ the peas for less than a specific price. But, even if such had been the instructions from the appellant to the appellee, it was still the duty of the appellee, while holding the peas for the price named, to exercise ordinary care, such as a reasonably prudent business man would exercise in his own affairs, for the preservation of the peas. If an emergency arose by which the appellee could observe that the further holding of the peas without putting the same in cold storage would entail a loss to it of the amount already advanced, and in addition thereto a loss to its principal, it was its plain duty, as shown by the above authorities, to take such precaution as any prudent business man would or should take in the conservation of his own property. In other words, it was appellee's duty to exercise ordinary care to secure not only itself but also its principal from loss or at least to minimize any loss as far as possible.

The issue as to whether or not the appellee had exercised the care and diligence required of it as factor should have been submitted to the jury under proper instructions, and the court erred in directing a verdict in favor of the appellee for full amount of its claim.

The judgment is therefore reversed and cause remanded for a new trial.