GALLUP v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY.

Opinion delivered October 27, 1919.

1. CARRIERS—OVERCHARGE OF FARE—REFUND—PRINCIPAL AND AGENT. —Where by agreement, appellant's traveling salesman was entitled, as between them, to retain all refunds for excess passenger fares charged by a railroad, appellant can not recover same from the railway, when the salesman neglected to do so.

2. SPOLIATION, DOCTRINE OF.—The doctrine of spoliation is applicable where documents have been wilfully, intentionally and wantonly destroyed by the spoliator, to prevent their being used as evidence.

3. SPOLIATION — LACK OF INTENT — DESTRUCTION OF PAPERS.—In a action against a carrier for overcharges on freight shipments, defendant carrier will not be charged with spoliation, where it permitted some of its records to be destroyed, in the absence of

the showing that the documents were intentionally destroyed, or that the lost documents were the best evidence.

4. CARRIERS—OVERCHARGE IN FREIGHT RATES—LIEN ON ROADBED.—An overcharge, by a carrier, in freight rates does not entitle the person overcharged to a lien on the carrier's roadbed.

Appeal from Baxter Chancery Court; *Lyman F. Reeder,* Chancellor; reversed in part; affirmed in part.

*Allyn Smith,* for appellant.

1. Appellant was entitled to recover for the excess passenger fares exacted not from Gallup himself but from his traveling salesman, Tindell, as he furnished the money to pay their passenger fares, and the court erred in holding that only Tindell could recover for the excess passenger fare. Gallup was the principal and Tindell only the agent; the principal was the real party in interest, and as the agent makes no claim, the principal was entitled to recover as upon a contract made by Gallup's agent. 78 Ark. 241.

2. She is entitled to recover the full $5,000 for excessive freight charges under the maxim, "*omnia praesumantur in odium soliatoris.*" The doctrine of liability for spoliation of records and evidence should have been applied. 1 Stra. 505; 1 Greenl. Ev., § 37; 2 Russ. Ch. 73; 1 Taylor Ev., § § 130, 116; 1 P. Wins. 731; Broom's Legal Max. 998; 1 Phill. Ev. 731; 24 Beav. 679; 40 Mich. 457; 17 How. St. Tr. 550; 12 Wind. 173; Cowper 86; 77 Mo. 64-85-87. The destruction of the records in the manner they were destroyed and at the time was a confession by the railroad company that if they had been properly preserved they would show full proof of Gallup's claims. 77 Mo. 64 (l. c.) 85 to 87, and cases *supra.*

3. Gallup was entitled to a lien upon the railroad. Kirby's Digest, § 6651; 93 Ark. 34; K. & C. Dig., § § 8172-4.

*Geo. A. McConnell,* for appellee and cross-appellant.

1. Gallup could not recover for excess fares paid by Tindell, as Tindell purchased his own tickets and paid for them with his own money and was entitled to any re-

fund. The contract was between him and the railway company, and there was no privity between Gallup and the railway company. 38 Sup. Ct. Rep. 186.

2. Plaintiff was not entitled to recover the full amount of overcharges in freight rates, but only the amount actually overcharged, as shown by the evidence and as found by the master and the court.

The spoliation doctrine does not apply in this case, and the cases cited by appellant are not in point and have no application. 56 Miss. 136; Wigmore, Ev., par. 291; 10 R. C. L., p. 884; Jones on Ev., pp. 128-133; 28 W. Va. 773; 238 Fed. 444; 241 *Id.* 967.

3. Plaintiff was not entitled to a lien on the railroad. 65 Ark. 183-187; 59 *Id.* 81; 70 *Id.* 262; 71 *Id.* 126; 74 *Id.* 528-535; 68 *Id.* 171; 66 Fed. 809; 127 Ark. 246, 252.

Plaintiff, if entitled to a lien, did not bring suit in time, one year. 124 Ark. 307; 108 *Id.* 219. Furthermore, plaintiff did not ask for a lien and the St. Louis, Iron Mountain & Southern Railway Company's property was sold under foreclosure and bought in and is owned by the Missouri Pacific Railway Company, free of all liens not asserted within the one year period.

HUMPHREYS, J. On October 28, 1913, Howard H. Gallup brought suit against appellee in the Baxter Chancery Court to recover $1,000 for overcharges in passenger fare, and $5,000, overcharges in freight rates, alleged to have been unlawfully exacted from him during the period dating from September 3, 1908, to July 18, 1913. It was alleged that during that period, under an injunctive order of the United States District Court for the Eastern District of Arkansas, wrongfully procured by appellee, the rate for carrying passengers was raised from the lawful rate of two cents to the unlawful rate of three cents per mile; and the lawful freight rate promulgated by the Railroad Commission of the State of Arkansas was unlawfully raised thirty-three and one-third per cent; that, by reason of said unlawful raise in rates, appellee overcharged said Gallup $1,000 in passenger

fares, and $5,000 in freight rates; that the books and papers showing such excess freight rates were in the hands of appellee who would not grant Gallup's demand to inspect same, and, by reason of said refusal, it was impossible to state the exact amount of the excess freight charges.

On the application of appellee, the United States District Court for the Eastern District of Arkansas enjoined Gallup from prosecuting this suit. The injunction remained in force until the 17th day of June, 1917, at which time, it was dissolved on appeal to the Supreme Court of the United States. Immediately thereafter, appellee filed answer, denying all material allegations in the bill filed in the Baxter Chancery Court. During the pendency of the injunction suit in the Supreme Court of the United States to prevent Gallup from prosecuting the case, he died, and the cause in the Baxter Chancery Court was revived in the name of Jennie Gallup, executrix of the last will and testament of Howard H. Gallup, deceased.

Upon motion, containing an allegation that the bill filed in the Baxter Chancery Court was in the nature of a bill of discovery and that the books, papers, bills of lading and other documents necessary to be used as evidence in order to prove the amounts of overcharges in freight and passenger rates, for which suit was instituted, appellant procured an order from the chancery court requiring appellee to produce the books and papers showing said overcharges. Appellee was unable to produce all the books and papers at Cotter, showing the overcharges during said period, because the records prior to the 31st day of December, 1910, had been shipped to St. Louis and destroyed, in accordance with custom and by permission of the Interstate Commerce Commission; and others were injured by rats and so mixed up and misplaced on account of the construction of a new depot at Cotter that they could not be found. For the same reason, the books and papers at Buffalo, showing the overcharges in freight, could not be produced.

A master was appointed to take evidence and state the amount of overcharges exacted from Gallup in the way of passenger fares and freight rates, from September 3, 1908, to July 18, 1913.

The cause was submitted to the court, upon the pleadings, evidence and report of the master, from which it was found and decreed that the appellee was indebted to appellant for $44.83 on account of excess passenger fares, and $644.32, on account of excess freight rates. The court also decreed a lien on the roadbed of appellee for overcharges in freight. Appellants, being dissatisfied with the amount of recovery on overcharges for passenger fares and freight rates, appealed from that part of the decree; and appellee has prosecuted a cross-appeal from that part of the decree fixing and declaring a lien on the roadbed for the overcharges in freight, which brings the whole case before this court for trial *de novo.*

The facts, in substance, are as follows: Under injunctive proceedings in the United States District Court for the Eastern District of Arkansas, appellee exacted three cents a mile for railroad fare from its passengers and a thirty-three and one-third per cent. increase over the freight rate promulgated by the Railroad Commission from its shippers in this State, between September 3, 1908, and July 18, 1913. The injunction was wrongfully issued and enforced during that period and was dissolved by the Supreme Court of the United States. the mandate from the Supreme Court being filed and becoming effective in the United States District Court for the Eastern District of Arkansas, on July 18, 1913. Between the dates September 3, 1908, and July 18, 1913, appellee had illegally exacted, directly from Gallup, excess passenger fares, and had also illegally exacted from his traveling salesman, Charles S. Tindell, excess passenger fares to the amount of $83.57 which had never been refunded to him. Charles S. Tindell traveled from September 3, 1908, to January 1, 1911, on credential books and received a refund of one cent a mile on said books from appellee. Under the terms of his contract with

his employer, Howard H. Gallup, he appropriated the rebate to his own use. It was the custom of the traveling men using credential books to retain the rebate themselves, and it was also the agreement between Tindell and Gallup. After January 1, 1911, to July 18, 1913, Tindell traveled on tickets and retained the coupons instead of purchasing credential books. He did this because the rebate on credential books was reduced at that time from one to one-half cent a mile. He lost or destroyed the coupons or return receipts on tickets purchased by him, and never made a claim himself against appellee for the one cent per mile excess passenger fares exacted from him during the time he traveled on tickets. His contract with Gallup was for a fixed salary and expenses.

Howard H. Gallup ran a wholesale mercantile establishment at Cotter and he had a retail store at Buffalo during the period in question. He purchased most of his goods for his wholesale house in Little Rock and shipped them intrastate from Little Rock to Cotter over appellee's railroad. He supplied his retail store at Buffalo from his wholesale house at Cotter and shipped the goods intrastate from Cotter to Buffalo over appellee's railroad, also. When this suit was commenced, the proof tends to show that Gallup had all the original expense bills in his possession. They were kept in pasteboard boxes on the shelves in the Cotter store. After the death of Gallup in 1916, Mr. Laskey, Gallup's brother-in-law, came to Cotter to assist the widow, Mrs. Jennie Gallup, in winding up the estate, and, without realizing or knowing the importance of the original expense bills, burned most of them. Such as were left were delivered to J. W. Wooley, who made a statement of the excess overcharges during the period from these and such books and papers as could be found in the possession of appellee. All the records in appellee's possession up to and including December 31, 1910, had been destroyed on application of appellee, without reference to, or thought of, the pendency of this suit, to the Interstate Commerce Commis-

sion, pursuant to an existing custom of destroying all duplicate expense bills over six years old. The records not destroyed had been injured by rats, inadvertently mixed up and confused with other records until it was impossible to find them all.

The confusion of the records resulted partly from moving them when the depot at Cotter was rebuilt. There was nothing to indicate that the records were purposely or intentionally destroyed, injured, confused or misplaced to prevent their use in this suit, neither does the evidence reveal that any special care was taken of the record by the employees of appellee after this suit was instituted. The first intimation appellee had that the original expense bills had been burned was when that fact developed in taking the evidence. After the discovery of the loss of the original expense bills every opportunity was furnished J. W. Wooley, who was selected to state the amount of overcharges, to search for records and papers in the possession of appellee relating to the overcharges of freight rates.

The statement of overcharges for freight during the period in question was made up by J. W. Wooley from the expense bills, books and papers which could be found. More records were found showing the amount of freight paid on outbound shipments during the year beginning September 9, 1912, and ending September 9, 1913, and for incoming shipments during the year 1911, than for any other year between September 3, 1908, and July 18, 1913. The testimony tended to show that the freight paid during these years on incoming and outbound intrastate shipments was a fair average covering the years from September 3, 1908, to July 18, 1913. The court used the shipments between these periods as a general average from which to ascertain the shipments during the whole period claimed, and rendered judgment accordingly.

The questions raised on direct appeal are whether, first, the chancery court erred in refusing to allow and decree to appellant $83.57, unlawfully exacted from Tindell, as passenger fare; second, in refusing to allow and

decree to appellant, as excess freight rates, the sum of $5,000 prayed for. The question raised on cross-appeal is whether the court erred in declaring and decreeing a lien on the roadbed of appellee for the overcharges in freight rates allowed by the court.

(1) Both by contract and custom existing between Tindell and Gallup, Tindell was entitled to a refund for the excessive passenger fares exacted from Tindell by appellee from January 1, 1911, to July 18, 1913. Gallup permitted him to retain the refund of one per cent on credential books purchased prior to that time, and no different arrangement was made with reference to the coupons or return receipts covering the excessive passenger fares after he began to travel on tickets. Tindell did not deliver the coupons to Gallup, nor did Gallup require him to do so. The clear inference from his testimony is that he retained them as his own property, as a prerequisite incident to his employment, with full knowledge and acquiescence on the part of Gallup.

(2) Because it appeared from the record in a general way that Howard H. Gallup shipped and received large shipments of merchandise intrastate, between September 3, 1908, and July 18, 1913, and necessarily expended a much larger sum in payment of the freights than was allowed him by the master and for which he received a decree by the court, and because appellee destroyed and permitted its records to be damaged, injured and misplaced after the institution of the suit in the Baxter Chancery Court for overcharges on freight rates, from which papers and records a statement of the overcharges could have been ascertained, it is insisted by appellant that the spoliation doctrine should have been applied by the chancellor, and judgment rendered for the full amount claimed. The ground for the application of the doctrine of spoliation is that the document was wilfully, intentionally or wantonly destroyed by the spoliator to prevent it from being used as evidence. The doctrine is founded on the fraudulent act of the party in whose possession it is. The case of *Pomeroy* v. *Benton*,

77 Mo. 64, as well as the other cases cited by appellant in support of her contention that this is a proper case in which to apply the doctrine of spoliation, clearly indicates that the law indulges the presumption that the documents destroyed would establish the demands. or claims of parties plaintiff, if the destruction of the documents by defendants is for the purpose of defrauding them.    In the instant case, the documents destroyed, injured or misplaced, were at best secondary evidence. The expense bills issued by appellee to Gallup constituted the original and best evidence.    These original expense bills were in the possession of Gallup at the time he instituted this suit and remained in his possession until his death, and in the possession of his partner after his death, until destroyed by Laskey, who had come to Cotter to assist appellant in winding up her husband's estate.

(3)    The allegation in the bill was not sufficiently definite and specific to carry knowledge to appellee that the books and papers then in its possession were the only documents from which an account might be stated of the overcharges in freight rates.    It was not alleged in the bill by Gallup that he had lost or destroyed the original expense bills.    Had this notice been carried home to appellee, it would perhaps have imposed a higher degree of duty in caring for the records then in its possession. A reading of the evidence, however, leads to the inevitable conclusion, and counsel for appellee admit, that the evidence falls short of showing that appellee or its officers intentionally destroyed the papers and records in question for the purpose of preventing them from being used as evidence.    We do not think the court erred in refusing to apply the spoliation doctrine in the instant case.

(4)    It is contended on cross-appeal that an overcharge in freight rates does not entitle the person overcharged to a lien on a railroad's roadbed.    The right to the lien must exist, if at all, under the provisions of section 6661 of Kirby's Digest, and under the following

clause contained in said section: "And every person who has sustained loss or damage to person or property from any railroad for which a liability may exist at law, * * * shall have a lien on said railroad."

The words "loss or damage," as used in the section, mean loss or injury to the thing itself; that is, to a person or to property. We think it has no reference whatever to an excess payment of freight rates. We have placed that construction upon the words "loss or damage" as used in a bill of lading. *C., R. I. & P. Ry. Co.* v. *Cunningham,* 127 Ark. 246.

The decree of the chancellor is affirmed in all things except in declaring the judgment for overcharges in freight rates a lien on the roadbed. In that particular, it is reversed and remanded with directions to render a decree in accordance with this opinion.