GAGE *v.* CHASTAIN.

Opinion delivered April 13, 1931.

644

*Evans & Evans* and *T. A. Pettigrew,* for appellant.

*D. L. Ford* and *Hardin & Barton,* for appellee.

BUTLER, J., (after stating the facts). It is admitted that the deed executed to Colvard was without consideration and merely for the purpose of placing the legal title to the property in B. A. Gage, it being her contention that the conveyance to her was to carry into effect a pre-existing agreement by which her husband was to convey the property to her, the consideration being an advance made by her to him of $1,450 and the interest her son, E. Gage, had therein, which had been previously given by him to her. The appellee contends that the deeds vesting legal title in B. A. Gage were colorable and executed with the intent to defraud him and prevent the collection of his debt.

After hearing the testimony in the case the chancellor found in effect that the transaction was such as alleged by the appellee, and the question now is, was his finding and judgment against the preponderance of the testimony? The answer to that question renders it unnecessary to discuss other questions raised as these become unimportant.

Certainly, it is true that an embarrassed debtor may convey his property to one of his creditors in satisfaction of a debt, even though the effect of the conveyance would defeat the remainder of his creditors in the collection of their debt. The case of *Baker* v. *Gowers,* 180 Ark. 1110,

25 S. W. (2d) 438, and the cases therein cited are conclusive on this question, but, in order for the conveyance to be upheld, it must be made in good faith and for a valid and subsisting indebtedness; and, where the value of the property is not out of proportion to the debt, such transaction is not fraudulent. It is also the rule, however, that conveyances made to near relatives of an embarrassed debtor are looked on with suspicion and scrutinized with care, and when they are voluntary they are *prima facie* fraudulent and become conclusive as to existing creditors when the embarrassment of the debtor proceeds to that point where he is insolvent. *Smith* v. *Wheat, ante* p. 149, and cases therein cited.

Applying these principles to the testimony in the case at bar, we have reached the conclusion that the decision of the trial court holding that the conveyance was colorable and in fraud of the rights of the appellee was not against the preponderance of, but is sustained by, the evidence. Appellee and her husband and son all testified that the appellee advanced $1,450 as a loan to R. Gage, her husband. This alleged transaction, however, occurred in 1923, if at all, and none of the witnesses testified with any degree of particularity as to the source from which she derived the money. The general statement only is made that she earned it selling vegetables, milk and butter, and that she had some property in Texas. How much property or the nature of it is not shown, nor what disposition, if any, was made of it. Appellee's son testified that appellee kept her money in the Bank of Ozark, but no canceled checks were introduced in evidence nor any contemporaneous memoranda tending to corroborate the testimony of the witnesses. The evidence is to the effect that at the time of the construction of the building on the lot in question the means of R. Gage were ample for that purpose. He had paid $1,550 for the lot, and in his application for the last loan he secured he gave the value of the property as improved at $6,500. Therefore he expended not more than $5,000 on the property. He paid $2,200 for his home, and he had in cash when he

purchased the lot the sum of $2,000, and from the proceeds of the loan and the sale of a farm he obtained $7,500—in all $9,500. The total value of the business property as improved and his home was $8,700. There was therefore no necessity for the alleged loan from the appellee to her husband. Appellee also claimed that her son, E. Gage, had an interest in the property, variously estimated at from twelve to sixteen hundred dollars, which he gave her by letter written from California, in 1924. E. Gage testified that $500 of this was for work done by him on the building and $75 in cash which he had paid for equipment in the garage, but in the letter relied on by the appellee, there was no specific statement as to any interest he had or claimed in the property itself. He and his father had been in the garage business located in the building which necessarily needed equipment, and it is likely such equipment was purchased by the partnership of Gage & Son. The statement in the letter is: ''I don't think I will be able to finish paying out my part of the garage, so I will give my part to you, which is about $1,200.'' It is significant that when Mrs. Gage first filed her intervention the sole claim made as to the consideration of the conveyance to her was the alleged loan of $1,450 made in 1923, and it was not until several months after that claim was made by amendment to the intervention of an interest by reason of the gift from her son. He was then married, and is not shown to have had any source of income while engaged in business with his father except from the business itself, out of which he testified he lived. No claim was ever made by him for an interest in the property, and he permitted his father to deal with it as his own.

This case is quite different from that of *Baker* v. *Gowers, supra,* relied on by the appellant, for in that case it was conclusively shown that the grantee in the deed alleged to be fraudulent was a person of large means and had advanced money to assist her grantor in the conduct of his business for which the canceled checks were exhibited and notes were given to evidence the different

amounts borrowed, all of these contemporaneous with the loan of the money, which did not long precede the conveyance of the property. It was also shown that the value of the property conveyed was much less than the debts due her. In the instant case, as we have seen, there is no evidence of any contemporaneous writing evidencing the transaction in any way or that the appellee had the means to enable her to make the alleged loan. She permitted her husband for more than five years from the time he first made the purchase of the lot to deal with it as his own, and a few weeks before the conveyance to her he had made an application for a loan in which he stated that he was the sole owner of the property, and just a few days before the execution of the deed to her she had signed and acknowledged the relinquishment of dower in the property, her husband mortgaging it to secure the loan for which application had been made; also, it was not until suit against R. Gage became imminent that the conveyance was made, and up until that time no claim for interest in the property had been made. These all were circumstances tending to cast doubt upon the *bona fides* of the transaction, and no effort was made to explain the same except the general statements heretofore mentioned. The trial court had a right to regard these circumstances as against the appellant, for, where the circumstances under which a transfer of property by a debtor is made are suspicious, the failure to give explanatory evidence is a badge of fraud. *Miller* v. *Jones,* 32 Ark. 337; *Burke* v. *Napoleon, etc.,* 134 Ark. 580, 202 S. W. 827; *Gallup* v. *St., etc., Ry. Co.,* 140 Ark. 347, 215 S. W. 586; *Ramey* v. *Fletcher,* 176 Ark. 196, 2 S. W. (2d) 84.

When all the attendant circumstances are considered, we think the chancellor properly found that there was no consideration passing between R. Gage and the appellee for the conveyance of the property, and that the transaction should be treated as a voluntary conveyance. The evidence preponderates that, when the conveyance was made to appellee, R. Gage had no other property out of which his debts could be met except forty acres of land

which sold for $55. It is doubtful in whose name is the homestead. Gage testified that the title was in him, and the appellee testified that it was in her, but whether in one or the other would make no difference in this case, for it could not be reached under execution. These circumstances were sufficient to justify the chancellor in his finding that the transaction was fraudulent. *Norton* v. *McNutt,* 55 Ark. 59, 17 S. W. 362; *Wilks* v. *Vaughan,* 73 Ark. 174, 83 S. W. 913; *Crampton* v. *Schaap,* 56 Ark. 253, 19 S. W. 669; *Smith* v. *Wheat, ante* p. 149.

It follows that the decree of the trial court dismissing the intervention for want of equity and canceling the appellee's deeds was correct, and it is therefore affirmed.