MIDDLETON *v.* MIDDLETON.

4-3394

Opinion delivered March 5, 1934.

*F. O. Butt,* for appellant.
*S. W. Woods,* for appellee.

BUTLER, J. J. H. Middleton died on October 7, 1932, leaving surviving him sons and daughters, all adults, as his sole heirs at law. This action was brought by the

appellees to establish a lost holographic will of the said J. H. Middleton, which they alleged was in existence at the time of his death, and had since then been destroyed.

On the issue joined, and the evidence adduced, the court rendered a decree, which, after reciting preliminary matters, found as follows: "After hearing all of the evidence, argument of counsel, and being duly advised in the premises, the court finds that the above-named parties, both plaintiffs and defendants, are the children and only heirs at law of J. H. Middleton, deceased; that prior to and at the time of his death and thereafter there was in existence an instrument purporting to be the last will and testament of the said J. H. Middleton, deceased; that it is claimed by the plaintiffs that said instrument was written in the own proper handwriting and signed by the said J. H. Middleton, and it is alleged that after his death the said instrument purporting to be his said will was destroyed by the defendant, Paul Middleton; that said instrument was by the court found to be in words and figures as follows:

" 'Omaha, Arkansas, November 23, 1923.

" 'I, John Middleton, being of disposing mind and memory, do make this my last will and testament.

" 'I will that all my just debts and funeral expenses be paid. I will my daughters, Gertie Middleton and Addie Middleton, my home and all of its contents. All of block thirty and lots three and four in block 5 in the original town of Omaha, also all of the northwest quarter of the northeast quarter of section twenty-seven, township twenty-one north of range twenty-one west, with all improvements attached thereto, except eight acres of the aforesaid forty deeded to L. M. Rea.

" 'I will my daughter, Gertie Middleton, two thousand dollars.

" 'I will my daughter, Addie Middleton, two thousand dollars.

" 'I will to Omaha Missionary Baptist Church the plot of land upon which the church is now located, fronting on the Springfield and Harrison road a distance of 100 feet, as indicated by iron stakes, and extending westward a distance of 150 feet, and lying in the south one-

half of the northeast quarter of section twenty-seven, township twenty-one north of range twenty-one west.

" 'I will to my sons and daughters, Charley Middleton, Paul Middleton, Clyde Middleton, Ada Guier and Edna Lee, equal shares in all of the remainder of my property, both real and personal.

" 'I will that the share of Edna Lee be placed in trust and the interest only to be paid her annually during the lifetime of J. C. Lee. I appoint my son, Paul Middleton, as administrator of this my last will and testament.

" '(Signed) John H. Middleton.

" 'This will needs no witnesses as everyone knows my signature. Known as J. H. Middleton.' "

"The court finds that said instrument as hereinabove set out, purporting to be the last will and testament, should be re-established to the end that the parties plaintiffs may file same for probate in the probate court, and that the probate court may have an opportunity to pass on the question as to whether or not said instrument is the last will and testament of the said J. H. Middleton.

"It is therefore by the court considered, ordered, adjudged and decreed that said instrument purporting to be the last will and testament of J. H. Middleton, deceased, be, and the same is, hereby restored and established as such purported instrument. To which ruling and judgment of the court, the defendant at the time excepted, and caused same to be noted of record, which is done, and prayed for an appeal to the Supreme Court of the State of Arkansas, which appeal is granted. Whereupon the plaintiffs ask the court to find as a fact that said instrument and signature was made in the own proper handwriting of J. H. Middleton, deceased, and was entitled to probate as the last will and testament, which finding the court declined to make, and plaintiffs saved their exceptions to such refusal."

The appellants call attention to § 10,545 of Crawford & Moses' Digest, which provides as follows: "No will of any testator shall be allowed to be proved as a lost or destroyed will, unless the same shall be proved to have been in existence at the time of the death of the testator, or be shown to have been fraudulently destroyed in the

lifetime of the testator; nor unless its provisions be clearly and distinctly proved by at least two witnesses, a correct copy or draft being deemed equivalent to one witness.'' They also call attention to § 10,495, fifth subdivision, relative to holographic will, which provides: ''Where the entire body of the will and the signature thereto shall be written in the proper handwriting of the testator or testatrix, such will may be established by the unimpeachable evidence of at least three disinterested witnesses to the handwriting and signature of each testator or testatrix, notwithstanding there may be no attesting witnesses. But no such will shall be pleaded in bar of a will subscribed in due form as prescribed in this act.''

Appellants make two contentions: first, that the will was not established by competent evidence in that the witnesses testifying to the effect that the body of the instrument and the signature thereto were in the proper handwriting of the testator, were not disinterested witnesses, as they were beneficiaries under the will. The answer to this first contention is, that there was no controversy relative to the handwriting and signature of the testator. Rules of evidence were formulated for the purpose of providing how disputed questions of fact might be determined, and where there is no dispute, there is no occasion for the application of the rules. Our statute recognizes this where it provides that it shall not be necessary to offer proof of the allegations of the complaint which are not denied in the answer. Section 1231, Crawford & Moses' Digest.

The undisputed testimony is to the effect that, shortly after the death of J. H. Middleton, three of his sons went to his place of business and from a safe obtained the will of their father, which apparently was known to be in existence. They repaired with the will to the home which had been occupied by the deceased, where all the sons and daughters were gathered, and Charley Middleton, one of the sons, read the will aloud, and he and two of the other children stated that the entire body of the instrument and the signature thereto were in the proper handwriting of the deceased. This testimony was not disputed.

The first contention may also be answered in this way: The act of the appellants made it impossible to comply strictly with the provisions of the statute relative to the proof of holographic wills. The proof is undisputed that, immediately after the will was produced and read in the presence of the heirs of the testator, it was intrusted to the eldest son of the deceased, and that afterward it was torn to pieces and burned by him, without any one ever having seen it besides the appellants and the appellees. The evidence does not show any active participation by the residuary beneficiaries in the act of Paul Middleton in destroying the will. The inference is plain, however, from their subsequent conduct, and as they were the ones to be benefited by his act, that they acquiesced therein. Now the appellants point to the statute and invoke its provisions to defeat the will, but they are met by the maxim, "No man should be permitted to advantage by his own wrong," and "Every presumption is made against a wrongdoer." By the destruction of the will it was made impossible for it to be inspected for the purpose of ascertaining in whose handwriting the body of the instrument and signature were. The parties to be benefited by the destruction of the will were the residuary beneficiaries, appellants here, and the act of the spoliator supplies the lost proof.

The general rule deduced from the maxim that all things are presumed against a wrongdoer is so natural and just that it has become a part of the law of every civilized land, and by it the presumption is all against the spoliator. Where some written instrument, which is a part of the material evidence in a case, has been destroyed, the presumption arises that, if it had been produced, it would have been against the interest of the spoliator, and, where the instrument destroyed is of such nature as to destroy all evidence, there follows a conclusive presumption that, if produced, it would have established the claim of the adversary of him who destroyed the instrument where it is shown that the destruction was willful. Where a deed, will or other paper, is proved to be destroyed, a presumption arises in favor of the party who claims under the paper, even though the

contents are not proved. *Hay* v. *Peterson,* 6 Wyo. 419, 45 Pac. 1073; *Lee* v. *Lee,* 9 Pa. St. 169. "If the will be lost, secondary evidence may be given of its contents. If suppressed or destroyed, the same is true; and, if necessary, the law will prevent the perpetration of fraud by permitting a presumption to supply the suppressed proof." *In re* Lambies' Estates, 97 Mich. 49, 56 N. W. 223.

In *Pomeroy* v. *Benton,* 77 Mo. 64, the court said: "We come now to the discussion of evidence by defendant. * * * Nothing remains to us but to apply to the defendant the stern rule recognized alike in equity and at law embodied in the maxim *omnia praesumuntur in odium spoliatoris.* * * * It would seem too plain for argument that, if secondary evidence were at hand, all need for the application of the rule would cease, and that, if the rule could not be applied unless upon the production of secondary evidence, then the spoiler could assure his success, by cutting off every source of information and every supply of evidence, could become successful in proportion to the destruction he had wrongfully wrought. * * * The law, in hatred of the spoiler, baffles the destroyer, and thwarts his iniquitous purpose, by indulging a presumption which supplies the lost proof, and thus defeats the wrongdoer by the very means he had so confidently employed to perpetrate the wrong."

In the case of *McClure* v. *McClintock,* 150 Ky. 250, 150 S. W. 322, it was held that willful destruction of evidence by the defendant may raise the presumption of guilt, overthrowing the presumption of innocence. The maxim referred to, *supra,* is recognized with approval by this court in the cases of *Miller* v. *Jones,* 32 Ark. 337; *Burke* v. *Napoleon Hill Cotton Co.,* 134 Ark. 580, 202 S. W. 827; *Gallup* v. *St. L., I. M. & S. Ry. Co.,* 140 Ark. 347-54, 215 S. W. 586.

The second contention of appellant is that the will was not proved as a lost will, as provided by § 10,545, *supra.* This contention falls for the reason that there was no dispute in the testimony regarding the existence of the will at the time of the death of the testator, or of its destruction, and its contents were clearly proved by three

witnesses, who, though interested, were competent to testify, there being no provision in the statute, *supra,* which would disqualify them on account of their interest.

There was some testimony regarding a purported family settlement by which it was agreed that the will should be denounced and withheld from publication, but as to this the evidence is in conflict, and it is clear whatever settlement was discussed, it was never in fact consummated.

The evidence is in conflict with respect to the contents of the will. We think that it preponderates in favor of the finding of the chancellor, and it would serve no useful purpose to set it out in detail. We conclude, under the peculiar facts of this case, that J. H. Middleton executed a will in his lifetime, the body of which, with the signature thereto, was in his own proper handwriting; that this will was in existence at his death and subsequently destroyed; that the proof is sufficient to warrant the court in establishing it as a lost will, and that its contents were as found by the chancellor.

We agree with appellees that the court below erred in not establishing the will as a valid holographic will. Its decree will accordingly be reversed, and the cause remanded with directions to establish the will and to order its decree certified to the clerk of the probate court for record, under the provisions of § 10,543 of Crawford & Moses' Digest.

JOHNSON, C. J., (dissenting). The exegeses of the majority opinion are not warranted or justified under the facts and circumstances here presented. The facts are, no set of circumstances warrant or justify a court in nullifying a plain and simple statutory provision. It is not a matter of construing a statute, but one which ruthlessly destroys it. Subdivision 5, § 10,494 of Crawford & Moses' Digest has been the established law in this State since the Constitution of 1836. Until now it has been respected by all the courts. Probably minor individual hardships have resulted from its application, but the many wholesome benefits which are safeguarded by its terms have fully compensated therefor.

I agree with the majority that it was necessary for the chancellor to determine that a valid will was executed by the deceased before an order could be effected restoring it. The chancellor refused however, on the testimony presented, to restore this instrument as a will, and he was eminently correct in so doing.

The only testimony offered by the proponents of the will were beneficiaries thereunder. The majority opinion concedes that these beneficiaries were interested parties. Subdivision 5 of § 10,494 in no unmistakable terms provides that a holographic will must be established "by the unimpeachable evidence of at least three disinterested witnesses." The majority opinion says: "The first answer to this contention is, that there was no controversy relative to the handwriting and signature of the testator." Certainly there was no controversy, because the man who executed the purported will was dead. The beneficiaries have no right to make a will for the testator, but this is exactly what is permitted by the majority opinion. If the plain provisions of the statuate are to be ignored in the future, testators had much better die intestate than to risk the probation of their holographic wills. In the future it will only be necessary for the beneficiaries to get their wits together and determine for themselves the distribution of property and thereby nullify and destroy the effectiveness of the will. The statute itself brings into question whether or not there is a valid will, and this wholesome statutory provision stands out as a safeguard in behalf of the deceased until it is overcome by unimpeachable testimony from at least three disinterested witnesses. Any other construction of the statute nullifies and destroys it. Section 1231 of Crawford & Moses' Digest, cited by the majority, has no application where the validity or invalidity of a will is involved.

It is next said by the majority that "the act of the appellants made it impossible to comply strictly with the provisions of the statute relative to the proof of holographic wills." No act of a beneficiary should be permitted to nullify and destroy a plain statutory provision. No question of estoppel should be invoked as

against the deceased. Deceased knew, when he executed this purported will, that subdivision 5 was in existence. He had a right to expect that its provisions would be complied with before his will became effective. Until this was done, there was no valid will.

The majority opinion next says: "No man should be permitted to have an advantage by his own wrong." This is beside the question. There is no testimony that appellants or either of them would obtain an advantage by reason of the alleged destruction of the will. The kind and character of property owned by deceased, at the time of his death, is not disclosed by this record. A number of cases are cited in the majority opinion supporting the theory of presumption, but no case cited touches the question here presented. I assert, without fear of contradiction, that no case can be found which nullifies and destroys a plain statutory provision just to accomplish the purpose of some beneficiary. The facts are, all the authorities agree that a holographic will must be executed in accordance with statutory formalities. Section 366, Page on Wills, second edition. Not only this, but the authorities all agree that statutes providing for the execution of holographic wills are mandatory and not directory. *In re* Thor's Estate, 183 Cal. 512; *In re* Jenkins' Will, 157 N. C. 429. This court is now permitting a holographic will to be probated and established by beneficiaries in the will. These beneficiaries are directly and pecuniarily interested therein. I can not refrain from sounding this warning! Courts are established to construe statutes and not to legislate.

I am authorized to say that Justices SMITH and HUMPHREYS concur in the views herein expressed.