### Wasson v. Patton.

4-3721

Opinion delivered February 18, 1935.

*Shinn, Henley & Rea,* for appellants.

*M. A. Hathcoat* and *Shouse & Walker,* for appellees.

BUTLER, J. The appellee, Joe Patton, was the cashier of the Bank of Western Grove, Arkansas, for about seventeen years. During this time he acquired several tracts of land in Newton County, and his business and that of the bank prospered until the collapse of values succeeding the year 1929. In 1920 he conveyed a farm to his wife, Claytie Patton. In December, 1931, the Bank of Western Grove became insolvent. On September 10, 1931, Joe Patton was indebted to the bank in the sum of $900, evidenced by two notes, and at the time of the insolvency of the bank he was also indebted to the Union Trust Company on his individual note in the sum of $550, and further indebted as an indorser on three notes executed by the Bank of Western Grove to the said trust company in approximately the sum of $13,000. He was the owner of eight shares of stock in the Bank of Western Grove of the par value of $800 upon which a stock assessment for that amount was levied. The note for $550 to the Union Trust Company bore the signatures of Joe Patton and Claytie Patton, as makers.

On June 6, 1932, Claytie Patton conveyed, by deed of that date, her farm to Carl Nichols. On July 8, 1932, Joe and Claytie Patton executed a mortgage on a tract of real estate to Laura Felton to secure a debt of $1,250. On December 31, 1932, Joe Patton and Claytie Patton, his wife, executed a mortgage to Nettie Cooper, to secure a debt of $300. On December 30, 1932, the same parties executed a mortgage to Fred W. Patton to secure a debt of $500, and on the following day mortgaged another tract of land to Mrs. S. C. Patton, mother of Fred W. Patton, to secure a debt of $500. On September 9, 1932, the Pattons executed a mortgage to C. W. Cotes to secure a debt of $........................., and on the 9th day of September, 1932, to secure a debt of $1,750, executed a mortgage on still another parcel of land to Mrs. L. C. Willis.

This suit was instituted by the appellants for judgment against Joe Patton and Claytie Patton, and to cancel the deed made by Claytie Patton to Nichols, and

the mortgages before noted on the ground that they were executed for the purpose of cheating and defrauding the appellants in the collection of their debts. It was alleged that the grantees in the several conveyances knew of the obligations of the said Joe and Claytie Patton; that the considerations named in these conveyances were simulated, and that the grantees joined with the grantors in the purpose of defrauding the appellants.

The Pattons and the grantees in the several conveyances were made defendants, all of whom answered denying the allegations of the complaint; the grantees in the mortgages averring that the same were executed to secure valid, and subsisting debts due them. Mrs. Claytie Patton averred that her purported signature to the $550 note was not her genuine signature, that it was not made by one having authority to sign her name, and that it was made without her knowledge or consent.

The decree gave judgment against Joe Patton in favor of the plaintiffs, and dismissed the complaint as to the other defendants.

The questions for our determination on the appeal are solely ones of fact, and the correctness of the decree must be conceded, unless it should appear that the conclusions reached by the trial court are against the preponderance of the testimony.

It is conceded that the conveyance by Mrs. Patton to Nichols was purely voluntary and should be set aside if Mrs. Patton was jointly indebted with her husband to the Union Trust Company. There was evidence tending to show that Patton conveyed land to his wife in consideration of a small debt he owed her, but there is no evidence tending to show that he was indebted to any one at that time. The inference to be drawn from the testimony is that he was then solvent and remained so for a number of years thereafter. He therefore had the right to give this farm to his wife and convey it to her by deed. Nor is there any real contention made that this conveyance was fraudulent or void.

To Mrs. Patton's answer denying execution of the note, an affidavit was attached denying the genuineness of her signature, and stating that it had not been made

with her knowledge and consent. This cast the burden of proof upon the appellants to establish the authenticity of her signature. Section 4114, Crawford & Moses' Digest; *Watkins Med. Co.* v. *Warren,* 150 Ark. 542, 234 S. W. (2d) 618; *Ohio G. Co.* v. *Nichol,* 170 Ark. 16, 279 S. W. (2d) 377. A signature was introduced on the trial of the case which was admitted by Mrs. Patton to be her genuine signature. Two witnesses who qualified as experts testified that they had compared the admitted signature with the purported signature of Mrs. Patton on the note to the Union Trust Company, and that, in their opinion, they were made by one and the same person. Mrs. Patton, in the course of her testimony, wrote her name several times, but it does not appear that these signatures were compared by the expert witnesses with her purported signature on the note. She testified in positive terms that she did not, herself, sign the note or authorize any one else to do so. She also testified that she was unaware of the fact that her name had been signed on the note until after the insolvency of the bank; that she had nothing to do with borrowing the money from the Union Trust Company, knew nothing of its having been borrowed, and, when she found out that her name had been signed to the note, she determined not to pay it; that with this idea in mind she made the conveyance to Nichols. Two of Mrs. Patton's friends, neighbors who had been intimate with her for a long time, testified that they were familiar with her handwriting. They examined the purported signature on the note, and stated that it was not the signature of Mrs. Patton. They compared this signature with a genuine signature of Mrs. Patton and pointed out the difference with particularity.

Mr. Patton testified that he did not tell the agent of the bank that Mrs. Patton had signed the note, but that he merely stated that her name was signed to the note. Neither the attorneys for the appellants nor the appellees pressed Mr. Patton as to this matter. He was not asked who, in fact, signed the note. We think the evidence justified the chancellor in his conclusion that Mrs. Patton did not, in fact, sign the note, and was not bound by its terms.

Fred W. Patton is a niece of Joe Patton, and Mrs. S. C. Patton is his sister-in-law. It is solely this relationship that casts any doubt upon the good faith of the parties in respect to the mortgages given by Joe Patton to them. We think the evidence justified the chancellor in his conclusion that the conveyances were made in good faith, and to secure a valid indebtedness. Miss Patton is a school teacher, and has been engaged in her profession for ten years, receiving an average salary of about $100 a month. Her mother, Mrs. Patton, is a housewife and raises turkeys and chickens, and, from their sale and the sale of eggs, she had been able to save money. She sent two girls to college, and in July or August of 1931 had about $300 in savings. Miss Patton had five or six hundred dollars saved. Joe Patton borrowed from Miss Patton in January, 1928, the sum of $500. He renewed the note in 1932. In July or August, 1931, he borrowed $300 from his sister-in-law. After the failure of the bank when rumors of Joe Patton's financial condition became known he executed the mortgage to Miss Patton, and another to her mother.

As to the grantees in the other conveyances, we think the evidence amply sufficient to sustain the findings of the chancellor. They were not related in any way to Joe Patton; there was positive evidence, both by Patton and by them, as to the existence of the debts; there were no suspicious circumstances connected with the contracting of the indebtedness or the execution of the mortgages, and the reason given by Patton for their execution is that they were his neighbors who had accommodated him by the loan of their money, and he felt there was an obligation on his part to secure them in preference to his debts incurred solely through business motives.

Joe Patton was admittedly insolvent at the time of the execution of the conveyances involved in this action. It appears, however, that the debts he owed the grantees were valid and subsisting. He therefore had the right to secure them in the payment of his obligations to them, notwithstanding this might result to the detriment of other creditors. *Gage* v. *Chastain*, 183 Ark. 641, 37 S. W.

(2d) 705; *McCown* v. *Taylor*, 186 Ark. 273, 53 S. W. (2d) 424.

Decree affirmed.