**G. L. NICKLAUS, Trustee in Bankruptcy of the Estate of Bronson Woodworth, Inc., Plaintiff,**

v.

**PEOPLES BANK & TRUST COMPANY, RUSSELLVILLE, ARKANSAS, Defendant.**

**No. LR–63–C–160.**

United States District Court
E. D. Arkansas, W. D.

Sept. 14, 1965.

---

D. D. Panich, Little Rock, Ark., for plaintiff.

Robert J. White, Russellville, Ark., Harry E. Meek, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

GORDON E. YOUNG, District Judge.

This is a proceeding by the plaintiff, G. L. Nicklaus, Trustee in Bankruptcy of the Estate of Bronson Woodworth, Inc., pursuant to §§ 67(d) and 70(e) of the Bankruptcy Act, 11 U.S.C. § 107(d) and 11 U.S.C. § 110(e), to recover the sums of $17,389.17 and $3,450.50 paid to the defendant, Peoples Bank & Trust Company of Russellville, Arkansas, by the bankrupt more than four months before the date of bankruptcy in satisfaction of an antecedent debt.

The facts show that Bronson Woodworth, Inc., a grain broker, had been doing business with the defendant, Peoples Bank & Trust Company of Russellville, Arkansas (hereinafter referred to as "defendant bank") from sometime in 1961 to March 5, 1963, and that sometime in the latter part of February 1963 the defendant bank learned that some of the accounts on Nutrena Mills which had been assigned as security for advances were for a larger amount than was owed by Nutrena Mills to Bronson Woodworth, Inc. About the same time, the defendant bank learned that certain bills of lading which had been passed through defendant bank with drafts attached by Bronson Woodworth, Inc. for collection, and on which no funds had been advanced by defendant bank, had been returned unpaid. At least one of the drafts attached to the bills of lading passed through for collection was on a non-existent bank. Prior to March 5, 1963, the defendant bank ascertained that Bronson Woodworth, Inc. was indebted to it in the amount of $20,786.41 and made a demand for payment. The payment of the account was accomplished by causing the said Bronson Woodworth, Inc. to transfer to defendant bank a credit existing in favor of the bankrupt at Merrill, Lynch, Pierce, Fenner & Smith, Inc., in the amount of $3,450.50 and by the tender of a cashier's check drawn on the Bank of Russellville in the amount of $17,389.17. Upon receipt of the latter amount, the defendant bank returned to the bankrupt the security it held. However, it is stipulated that the security held by the defendant bank in the nature of accounts receivable on Nutrena Mills was of no value.

The facts further show that prior to March 5, 1963, the bankrupt had made arrangements with the Bank of Russellville, competitor of defendant bank, for credit to be extended upon bills of lading; that the bankrupt deposited spurious bills of lading with the Bank of Russellville upon which he obtained immediate credit in the amount of $171,350.91;[1] and that he then wrote a check, upon which he obtained the cashier's check, in the amount of $17,389.17 that he delivered to defendant bank.

The testimony shows that the Bank of Russellville did not check with the defendant bank before advancing the credit to

---

[1] $4,382.01 was actually collected on the bills of lading. The remainder is stipulated as having been obtained by fraudulent representations of the bankrupt.

the bankrupt and that the defendant bank had no notice that the bankrupt was obtaining or had obtained credit with the Bank of Russellville.

The record shows the trustee has received assets in the amount of $48,022.44, and that claims have been filed in the amount of $208,319.18, which is subject to being reduced by the amount of $21,999.85 in money and the value of $101,000.00 in bonds, recovered by the Bank of Russellville in an action based upon the theory of a constructive trust.[2]

The trustee makes the following contentions:

1. That the payments received by the defendant bank constitute a fraudulent conveyance both under § 67(d) of the Bankruptcy Act and Ark.Stats. § 68–1302 in that they were received under such circumstances that they would have constituted a preference under § 60 of the Bankruptcy Act had they been made within four months of bankruptcy and that, therefore, since the defendant bank knew or had such facts as to put it on inquiry that the bankrupt was insolvent at the time, it was charged with knowledge that the bankrupt could not have obtained the funds to pay it without having committed some fraud;

2. That under the circumstances here, the satisfaction of the antecedent debt by defendant upon receipt of the moneys involved would not constitute a fair consideration within the definition of § 67(d) (1), (e) because there was no "good faith" on the part of the defendant bank; and

3. That the $17,389.17 cashier's check on the Bank of Russellville which was received by defendant bank constituted trust funds belonging to Bank of Russellville which it had a right to follow and that by virtue of § 70(e) the trustee now has a right to recover them.

Section 67(d) (2) of the Bankruptcy Act, 11 U.S.C. § 107(d) (2), provides:

"Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this Act by or against him is fraudulent

"(a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent; or

"(b) as to then existing creditors and as to other persons who become creditors during the continuance of a business or transaction, if made or incurred without fair consideration by a debtor who is engaged or is about to engage in such business or transaction, for which the property remaining in his hands is unreasonably small capital, without regard to his actual intent; or

"(c) as to then existing and future creditors, if made or incurred without fair consideration by a debtor who intends to incur or believes that he will incur debts beyond his ability to pay as they mature; or

"(d) as to then existing and future creditors, if made or incurred with actual intent as distinguished from intent presumed in law, to hinder, delay, or defraud either existing or future creditors."

Section 67(d) (1) of the Bankruptcy Act, 11 U.S.C. § 107(d) (1), provides:

"For the purposes of, and exclusively applicable to, this subdivision:

\* \* \* \* \* \*

"(e) consideration given for the property or obligation of a debtor is 'fair' (1) when, in good faith, in exchange and as a fair equivalent therefor, property is transferred or an antecedent debt is satisfied, or \* \* \*."

**2.** See In re: Bronson Woodworth, Inc., 229 F.Supp. 262 (D.C.1963), affirmed Nicklaus v. Bank of Russellville, 336 F. 2d 144 (8 Cir., 1964), for other proceedings in this Court involving the bankrupt.

As I understand the cases construing § 67(d) (2), Coder v. Arts, 213 U.S. 223, 29 S.Ct. 436, 53 L.Ed. 772 (1909), Van Iderstine, Trustee v. National Discount Co., 227 U.S. 575, 33 S.Ct. 343, 57 L.Ed. 652 (1913), Irving Trust Co. v. Chase Nat. Bank, 65 F.2d 409 (2d Cir. 1933), a preferential payment to a creditor does not in itself constitute a fraudulent conveyance. It is true that in Dean v. Davis, 242 U.S. 438, 37 S.Ct. 130, 61 L.Ed. 419 (1916), a transfer by way of mortgage to one who knowingly advanced money to enable the debtor to make a preference in violation of § 60, was held to be a fraudulent conveyance,[3] but I do not construe that decision as overruling Coder v. Arts, supra, and Van Iderstine, Trustee v. National Discount Co., supra, and certainly cannot, on the facts, place the defendant creditor here involved in the position of the brother-in-law who knowingly made the advances and took the mortgages in the *Dean* case to enable the debtor to make a preference.

Under the facts presented, I find that the defendant bank had such knowledge as would make it suspect that the bankrupt was insolvent for purposes of § 60 of the Bankruptcy Act, but § 60 is not here involved (more than four months having elapsed since the transfer), and it does not necessarily follow that the defendant bank was charged with notice that the bankrupt committed some fraud in securing the money, nor can I find any facts which would have charged the defendant bank with any such notice.

The law of Arkansas, Wasson v. Patton, 190 Ark. 397, 79 S.W.2d 276 (1935), like the federal law, also holds that a preference of one creditor over another does not in itself make the transfer to the preferred creditor void or voidable as a fraudulent conveyance.

Since I am unable to find from the evidence that the defendant bank knew (or was even put upon inquiry) that the bankrupt was paying its antecedent debt with moneys acquired by fraud, it also follows that I must hold the trustee's second contention to be without merit. I do not believe that under the definition of "fair consideration" set out in § 67(d) (1), (e) a creditor does not act "in good faith" in receiving a cashier's check and applying it to the satisfaction of an antecedent debt merely because he suspects that the debtor making the payment is insolvent. To hold otherwise would in my opinion make the four-month limitation set out in § 60(a) and § 67(d) (3) meaningless.

Under § 70(e) (1) the trustee is also given the right to avoid any transfer which any creditor of the bankrupt having a claim provable under the Bankruptcy Act could have avoided under either federal law or state law, Hartman v. Lauchli, 238 F.2d 881, (8 Cir., 1956), and to hold the assets so recovered for the benefit of all creditors, Moore v. Bay, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 (1931). Such actions on the part of the trustee, however, are subject to the same defenses which could have been asserted against the creditor having such alleged right of avoidance at the time of bankruptcy, Collier on Bankruptcy (14th Ed.) § 70.90, pp. 1732, 1733.

I have already pointed out that the transfers here involved do not constitute a fraudulent conveyance under the laws of Arkansas. Nor can the trustee recover from the defendant bank on the theory that the Bank of Russellville could have impressed a constructive trust upon the $17,389.17 received by way of the cashier's check, for under the Uniform Commercial Code, Ark.Stats. §§ 85–3–302 and 85–3–303, the defendant bank would have been a holder in due course. In this connection, I find that the defendant bank in accepting the cashier's check in satisfaction of the antecedent debt acted in good faith and without notice as

---

3. The rule in the Dean case is now codified in § 67(d) (3) of the Bankruptcy Act, which limits the avoidability of such transfers to transfers made within four months of bankruptcy.

those terms are defined in Ark.Stats. § 85–1–201(19) and (25).

For the foregoing reasons, I have concluded that the trustee has not shown that the transfers in question constituted a fraudulent conveyance or were otherwise voidable by any creditor having a provable claim under either the laws of the United States or the law of Arkansas,[4] and it therefore follows that the complaint should be dismissed with prejudice.

---

4. This determination makes it unnecessary for me to rule on the issue of res judicata raised by the defendant and objected to by the trustee on the ground that it came too late.