Orlando De ARAGON, as Trustee of Central San Vicente, Inc., et al., Plaintiffs, Appellants,

v.

The CHASE MANHATTAN BANK et al., Defendants, Appellees.

No. 71–1129.

United States Court of Appeals, First Circuit.

March 30, 1972.

---

5. In view of the disposition made it is unnecessary to consider a motion which the defendant filed for summary reversal.

**264**

Hyman Gold, New York City, with whom Robert E. Stafford, Krause, Hirsch & Gross, Orlando J. Antonsanti, and Gabriel Guerra Mondragon, San Juan, P. R., were on the brief, for appellants.

Samuel R. Ballin, New York City, with whom Milbank, Tweed, Hadley & McCloy, New York City, and Fiddler, Gonzalez & Rodriguez, San Juan, P. R., were on the brief, for appellees.

Before COFFIN, Circuit Judge, VAN OOSTERHOUT*, Senior Circuit Judge, and STEPHENSON*, Circuit Judge.

STEPHENSON, Circuit Judge.

This is an appeal from a decision of the trial court dismissing the complaint of the Chapter X Trustee of Central San Vicente, Inc.[1] (San Vicente), a Puerto Rican sugar mill, seeking to recover the $250,000 paid by San Vicente to the appellee, The Chase Manhattan Bank (Chase) alleged to be a fraudulent transfer as defined by § 67d of the Bankruptcy Act, 11 U.S.C. § 107. Appellant challenges certain findings and conclusions of the trial court which will be discussed seriatim. It will be helpful if we set out a brief summary of the trial court's findings and conclusions.

Jorge Gonzalez Hernandez (Gonzalez) was principal stockholder and Chief Executive of San Vicente, which operated a sugar mill and warehouse; Gonzalez also cultivated sugar cane on lands owned in his own name and in the names of two other companies, Compania Agricola Mendez (Agricola) and Central Agricultural Co., Inc. (Central); thus Gonzalez and these two companies were colonos of the mill, San Vicente, which also ground cane of other colonos (planters).

Chase financed the cultivation of the cane grown by Gonzalez and his companies under recorded *refaccion* or crop loan contracts whereby under local law Chase held crop liens on all the cane produced.[2] Such loans for the 1961–62 crop season were: Gonzalez—$274,000, Agricola—$69,000, Central—$20,000, for a total of $363,000.[3] During that season approximately 6400 tons of sugar were produced by San Vicente from cane delivered by Gonzalez and his companies In early 1962, 4100 tons—the share belonging to Gonzalez and his companies —were sold and San Vicente used the proceeds, aggregating at least $209,000, in the operation of the mill.

In late June 1962 San Vicente made two payments to Chase totalling $230,-000 on account of Gonzalez and a payment to Chase of $20,000 on account of Central.[4] These payments were made "as part payment for liquidation of their colono sugars. * * * Thereafter,

---

* Of the Eighth Circuit, sitting by designation.

1. Following reorganization, San Vicente's successor, New San Vicente, Inc., was permitted to intervene and assert the identical claim.

2. 5 Laws of Puerto Rico Annotated §§ 164, 169, 170.

3. Chase also loaned a total of $1,111,120.24 to San Vicente which was used for advances to other colonos and to meet dead season expenses. These loans were secured by mortgages on San Vicente's real estate and plant and by a pledge of colono notes.

4. The $250,000 paid to Chase was obtained from the proceeds of a $417,000 loan San Vicente obtained from the Government Development Bank. The stated purpose of the loan was to enable San Vicente to pay for repairs and improvements to the machinery and equipment of the mill.

Chase continued to make dead season loans to San Vicente up to July 19, 1962 at which time Chase first learned that San Vicente was in financial difficulties that eventually lead to the filing of the Chapter X petition." It was then discovered that San Vicente had issued about $1,000,000 worth of receipts for mill sugars in excess of the amount in its warehouse. The 7,741 tons actually in the warehouse were claimed by other colonos, purchasers from colonos, and by outside investors. These conflicting claims were ultimately determined in an interpleader suit filed in a local court. Prior thereto, Chase made claim to the colono sugars of Gonzalez and his companies sold to Olavarria Sugar Corporation which had been pledged with Banco Credito y Ahorro Ponceno. These claims were settled by Banco Credito paying Chase the balance still due on crop loans to Gonzalez ($44,000) and the balance due on crop loans to Agricola ($69,000), and by Chase assigning its crop liens to Banco Credito. Banco Credito was able to recoup these payments out of the sugar proceeds distributed by the local court in the interpleader action.

■ Upon these findings the trial court concluded that the June 1962 payment of $250,000 to Chase on account of Gonzalez [5] was not a fraudulent transfer under § 67d of the Bankruptcy Act. In so holding the trial court determined that under Section 172 of Chap. 5 of the Laws of Puerto Rico Annotated,[6] San Vicente, despite the fact that it "had parted with the sugars and had diverted the proceeds of sale, the 'third party' liability of the mill remained. The circumstance that Chase could follow the sugars in the hands of other 'third parties' could not relieve the mill of its liability, which did not depend on the continued possession of the sugars or their proceeds. Chase could enforce that liability against the mill *in personam* and Chase remained a creditor of the mill to the extent of the value of the sugars." Further, that the receipt of $250,000 by Chase "had the double effect of satisfying in part the colonos' contractual liability for their crop loans and also satisfying the mill's statutory liability for the sugars of these colonos;" that such payment constituted payment of an antecedent debt (whether secured or unsecured) and was a fair consideration under § 67d(1) of the Bankruptcy Act; that in light of the fact that Chase continued to furnish dead season loans and colono financing to San Vicente after the deposited $250,000 was paid to Chase, the "good faith of Chase in these transactions can scarcely be questioned."

Initially, the trustee contends that at the time the $250,000 was paid to Chase no liability on the part of San Vicente existed by virtue of the alleged statutory crop liens because the evidence established that the sugars received by San Vicente from Gonzalez were returned to him and his companies. This factual issue was resolved against the trustee. We, of course, accept the trial court's findings of fact unless clearly erroneous. Here there is record proof supportive of the trial court's finding. We simply observe that Gonzalez, himself, testified that " * * * I determined that San Vicente could use those sugars for an interim period with the clear understanding that before the end of the crop these sugars would be replaced, or paid for in cash to fulfill the obligations which followed these sugars." He further testi-

---

5. The payments on account of Gonzalez and his companies as colonos will be treated as payments on acount of Gonzales.

6. 5 LPRA § 172 provides as follows: "Such entries and marginal notes of entries as may be made in the 'Registry of contracts for agricultural purposes' shall be to the prejudice of and binding upon third parties, from and after the filing of the respective documents. If, while the lien is in force, the products encumbered are disposed of by the debtor to a third party, the creditor making the advances for agricultural purposes shall have the right to obtain from the latter the delivery of the said products or the proceeds of the sale thereof, in case the return of the products is impossible."

fied that he caused San Vicente to make the $250,000 payment to Chase for these sugars. The weight to be given this testimony and the records supportive thereof was for the trial court.

The trustee next complains because the disputed payments to Chase were made from funds specifically shown to have been created by a loan obtained for the purpose of making plant repairs. The trial court found that prior to the receipt of these funds San Vicente used other monies to pay equipment suppliers, including the proceeds of the sales of the colono sugars of Gonzalez and his companies. This is supported by the record. Although the loan application does not reveal that funds from colono sugars were actually used, it does state that the improvements were accomplished during the off season of the year 1961 and were "furnished in part by the Chase Manhattan Bank and another part by commercial concerns, suppliers of equipment and services, that granted credit on a very short term." The mere fact that the loan proceeds were used in part to reimburse Chase for previously converted sugar proceeds used in San Vicente's operations does not in itself make the same a fraudulent transfer. The crucial issue is whether San Vicente's conversion of the sugar proceeds created an antecedent debt within the purview of Section 67d(1) of the Bankruptcy Act. We are satisfied that it did.

It is clear that under the applicable provisions of the Puerto Rico law, 5 LPRA §§ 164–180, a lien is created in favor of those lending money to colonos for the production of sugar cane, which if properly registered, is binding on third parties to the extent that the creditor can demand the delivery of the product or the proceeds of the sale thereof, in case the return of the products is impossible.[7] The purpose of the statute is to facilitate loans to farmers and in furtherance of that purpose it establishes broad protection for the lender. See, Molina v. Munoz, 31 F.2d 727 (1st Cir. 1929); Ana Maria Sugar Co., Inc. v. Santos, 48 P.R.R. 63 (1935); Perez v. Claudio, 48 P.R.R. 559 (1935). In the matter at hand, we agree with the conclusion of the trial court that it was the intent of the statute that Chase's crop liens would be binding on San Vicente as the mill which received the cane and manufactured the sugar and that such liability would continue until the loans were paid. Failure of the mill to turn over the sugar or their proceeds did not relieve the mill of its liability to the lender, Chase.[8] Therefore, the disputed payments could be retained by Chase in partial satisfaction of the debt due from the mill if other requirements of the Bankruptcy Act were met.

■■ Under the appropriate provisions of the Bankruptcy Act the payments must meet the test of "fair consideration" if they are to avoid the consequences of a fraudulent transfer. "Fair consideration" as here applicable requires both an antecedent debt which is in an amount not disproportionately small as compared to the payments received and "good faith" on the part of the recipient.[9] Gilmer v. Woodson, 332 F.2d 541 (4 Cir. 1964); Cohen v. Sutherland, 257 F.2d 737, 742 (2 Cir. 1958); Nicklaus v. Peoples Bank & Trust Co., Russelville, Arkansas, 369 F.2d 683 (8 Cir. 1966), aff'g 258 F.Supp. 482 (E.D. Ark.1965); Collier on Bankruptcy, 14th ed., Vol. 4, § 67.33, p. 503; Remington on Bankruptcy, Vol. 4, § 1654, pp. 181–184. The question of whether fair consideration has been given for a transfer is largely a question of fact, as to which

---

7. See particularly § 172, Fn. 6.

8. See trial court's opinion, D.C., 322 F. Supp. 1006, at p. 1009.

9. Section 67d(1) defines "fair consideration" as follows:
   "(e) consideration given for the property or obligation of a debtor is 'fair' (1) when, in good faith, in exchange and as a fair equivalent therefor, property is transferred or an antecedent debt is satisfied, or (2) when such property or obligation is received in good faith to secure a present advance or antecedent debt in an amount not disproportionately small as compared with the value of the property or obligation obtained."

considerable latitude must be allowed to the trier of the facts. Mayo v. Pioneer Bank & Trust Co., 270 F.2d 823, 829 (5 Cir. 1959), cert. denied 362 U.S. 962, 80 S.Ct. 878, 4 L.Ed.2d 877. Here the antecedent debt due Chase from San Vicente arose from the receipt and use by the mill of the proceeds of the sale of sugars delivered by Gonzalez and his companies. The trial court found that San Vicente received payments aggregating at least $209,000 for the share belonging to Gonzalez and his companies. The evidence supports the trial court's finding as to this amount. Moreover, it is clear that in addition to the colonos' share, the processor is entitled to and here received a substantial share of the sugar produced in compensation for its services. As to this share, or its monetary value, the Chase lien would also attach. We therefore conclude that San Vicente had a sound basis for making payment to Chase in the amount of $250,000 and that it was made for "fair consideration" within the meaning of the Bankruptcy Act.[10]

Affirmed.

---

10. The matter of voidable preference has not been presented on this appeal and therefore will not be discussed.