**William L. BIGGS, Jr., as Trustee in Bankruptcy of National Auto Supply, Inc., Bankrupt, Plaintiff,**

v.

**UNITED STATES NATIONAL BANK OF OMAHA, Defendant.**

Civ. No. 78–0–526.

United States District Court, D. Nebraska.

Oct. 17, 1980.

---

2. 11 U.S.C. § 1307(b).

Douglas E. Quinn, Omaha, Neb., for plaintiff.

Michael L. Schleich, Omaha, Neb., for defendant.

## MEMORANDUM

DENNEY, District Judge.

The trustee of the bankruptcy estate of National Auto Supply, Inc. [bankrupt], brings this action to set aside loan payments made by the bankrupt to the defendant United States National Bank of Omaha. The trustee alleges that these payments were fraudulent conveyances in violation of § 67(d)(2)(b) of the Bankruptcy Act. Essentially, the trustee contends that the bankrupt did not receive fair consideration for these payments because they were made to discharge a debt owed by National Auto Centers, Inc., to the defendant. A non-jury trial has been held to resolve this issue. The following discussion constitutes this Court's findings of fact and conclusions of law.

*Findings of Fact*

1. The bankrupt was a small, family run, wholesale and retail auto parts and accessory business that operated out of two locations in Omaha, Douglas County, Nebraska. Jerry Cohn, the son of the founder of the business was associated with the bankrupt from 1947 through the filing of the involuntary bankruptcy petition. In 1975, Jerry Cohn assumed full ownership of the bankrupt.

2. The bankrupt had a banking relationship with the defendant bank since 1952. The relationship continued until the date of the filing of the involuntary bankruptcy petition. From 1972 to 1975, the bankrupt did not borrow money from any bank other than the defendant.

3. In 1971, the bankrupt opened a store in West Omaha, operating under the name of National Auto Supply. At this same time a second corporation, National Auto Centers, was formed. Although this corporation was, on paper, a legal entity separate from the bankrupt, it had the same officers and shareholders as the bankrupt.

4. This second corporation was formed to lease the property for the West Omaha store from a third party. National Auto Centers held this lease from 1971 to 1977.

5. During its entire existence, National Auto Centers has engaged in practically no business activities. The corporation contributed nothing to the business operations of the bankrupt, other than executing the lease and the notes discussed below.

Although the leased property was occupied and used by the bankrupt, National Auto Centers never entered into a sublease agreement with the bankrupt. National Auto Centers did not make any payments on the lease. All lease payments were made by the bankrupt directly to the lessor. In addition, the bankrupt paid the taxes and insurance on the leased property.

National Auto Centers did have an account at the defendant bank, but there was very little activity in the account. The corporation has never filed any tax returns.

6. National Auto Centers executed a series of notes naming National Auto Centers as obligor. These notes were given to the defendant bank in return for loans. None of the participants in these loan arrangements could recall why National Auto Centers was named as the sole obligor on the notes. These notes were subsequently renewed on several occasions, yet National Auto Centers always remained as the named obligor. However, at some point, Gerald Cohen, the bankrupt's founder, and Saralee Cohen provided personal guarantees on the notes.

7. Although National Auto Centers was the named obligor, the notes were always treated by those concerned as the obligation of the bankrupt. Jerry Cohn, majority shareholder and "owner" of the bankrupt since 1975, testified that he always felt that these notes were the obligation of the bankrupt. This testimony is corroborated by the fact that all proceeds from the loans were immediately transferred to the bankrupt's accounts from National Auto Centers' account. The proceeds were used to buy fixtures and inventory for the bankrupt's business. The bankrupt also made all the monthly payments on these notes. These payments were made on a regular basis for several years, and were not limited to the conveyances which are in issue here. Moreover, the bankrupt listed the notes as an obligation on its financial statements, and it claimed the interest paid on the loans as a tax deduction.

8. The defendant bank also treated the bankrupt as the actual borrower. The bank obtained financial statements from the bankrupt, but not from National Auto Centers. In addition, the bank, through its employee, Edgar M. Morsman, Jr., knew that the proceeds of the loan were being used to purchase inventory for the bankrupt.

9. Within one year prior to the filing of bankruptcy, the bankrupt made several payments to the defendant in repayment of the notes on which National Auto Centers was named as obligor. These transfers totaled $22,109.16.

10. Despite the relationship between the two corporations, National Auto Centers was included among the bankrupt's list of creditors filed in the Bankruptcy Court by the bankrupt. It was included because the bankrupt had stopped making lease payments to the lessor.

11. There is no evidence in the record which even remotely suggests that the parties involved with these transactions did not act in good faith.

*Conclusions of Law*

 Under Section 67(d)(2)(b), the trustee must prove that the bankrupt's payments to the defendant bank were made without fair consideration. Fairness of consideration is basically a factual issue whose resolution depends on an assessment of the particular circumstances of each case. *See generally Klein v. Tabatchnick,* 610 F.2d 1043, 1047 (2d Cir. 1979); *Mazo v. Pioneer Bank & Trust Company,* 270 F.2d 823, 829–30 (5th Cir. 1959). Among the factors which should be considered is the relationship between the bankrupt and any third parties benefitted by the conveyance in issue. *Matter of Winslow Plumbing, Heating and Contracting Co.,* 424 F.Supp. 910, 915 (D.Conn.1976); *McNellis v. Raymond,* 287 F.Supp. 232, 238 (N.D.N.Y.1968). For reasons discussed below, the Court finds that the bankrupt's payments to the defendant were not without fair consideration.

 A black letter rule of bankruptcy law is that transfers by a bankrupt for the benefit of third parties are made without fair consideration. *E. g., Klein v. Tabatchnick, supra,* 610 F.2d at 1043. Thus, a bankrupt's payment satisfying the debt of a third person is generally a transfer without fair consideration. As with most black letter rules of law, this rule has an exception. Courts have held that when an identity of interest exists between the bankrupt and the benefitted third party, the benefit conferred upon the third party may be treated as fair consideration to the bankrupt. *Mayo v. Pioneer Bank & Trust Company, supra,* 270 F.2d at 830–31; *McNellis v. Raymond, supra,* 287 F.Supp. at 234, 240. The following excerpts from *McNellis* illustrate the rationale of this approach:

> The trustee has the burden of showing more than the bare fact that Donald [bankrupt] paid a debt of Potter Securities [third party benefitted]; he must show that Donald's payments to Raymond [defendant] constituted a misappropriation of Donald's funds, such as would arise from an absence of obligation by Donald to Potter Securities. *Barr &*

*Creelman Mill & Plumbing Co. v. Zoller, supra,* [2 Cir., 109 F.2d 924] at 926. But here there was such a "degree of identity and commingling of affairs" between Donald and Potter Securities that they cannot be regarded as separate entities insofar as Donald's obligation to repay the loans is concerned. *Mayo v. Pioneer Bank & Trust Co., supra,* [5 Cir., 270 F.2d 823] at 830. The deposit of Raymond's money in Donald's bank account, all else aside, gives rise to an antecedent indebtedness on the part of Donald sufficient to satisfy the requirement of fair consideration. Id. at 829. Moreover, the indirect benefit Donald received in postponing the date of bankruptcy as a result of Raymond's loans would support a finding of fair consideration. *Williams v. Twin City Co., supra,* [9 Cir., 251 F.2d 678] at 681.

> \* \* \* \* \* \*

> Raymond's loans, although in form to Potter Securities, found their way into Donald's bank account by virtue of the identity of interest between Potter Securities and Donald. Raymond was entitled to be repaid. No one was more clearly indebted to Raymond than was Donald. Under these circumstances, to grant Donald an immunity from his obligation of repayment would make a mockery of the elemental duty owed by a debtor to a creditor. For purposes of repayment of the loans, the corporate formality adhered to in making the loans will be disregarded. There was fair consideration to support Donald's repayment of the loans to Raymond.

*Id.* at 238, 240. Applying this analysis to the instant case, the Court is of the opinion that separate corporate identities of the bankrupt and National Auto Centers should be ignored.

The bankrupt and National Auto Centers have a complete identity of interest. In essence, they are separate corporations on paper only. This is evidenced by the fact that although National Auto Centers was the lessee, the bankrupt occupied the property and paid rents, insurance premiums and taxes without ever formally entering

into a sublease. Similarly, even though National Auto Centers was the obligor on the notes, the bankrupt received all the proceeds from the loans and made all the installment payments. Finally, it is clear that other than executing the notes and lease, National Auto Centers engaged in no other business activity. Under circumstances such as these, the Court is of the opinion that the total identity of interest between the bankrupt and National Auto Centers justifies treating these two corporations as a single entity. Thus, the Court finds that the bankrupt's payments to satisfy this debt were not without fair consideration.

 An alternate ground for finding fair consideration is the indirect benefit that the bankrupt received from these payments. Under Nebraska law, the defendant in the instant action could have brought suit against the bankrupt to recover the amount of loans made to the bankrupt through National Auto Centers.

> "A quasi contract is a contract implied in law and usually has its origin in the principle that a person shall not be allowed to enrich himself unjustly at the expense of another. 17 C.J.S. Contracts § 6, p. 566. Where benefits have been received and retained under such circumstances that it would be inequitable and unconscionable to permit the party receiving the benefits to avoid payment therefor, the law required the party receiving and retaining the benefits to pay the reasonable value of them."

*Haggard Drilling, Inc. v. Greene*, 195 Neb. 136, 142, 236 N.W.2d 841, 845 (1975) *quoting Bush v. Kramer*, 185 Neb. 1, 173 N.W.2d 367 (1969). Since the bankrupt and the bank always treated the loans as obligations of the bankrupt, it would appear that the bank could have recovered the amount of the loans from the bankrupt as unjust enrichment. In light of this fact, the bankrupt indirectly benefitted from the payment of National Auto Centers notes, since payments satisfied any obligation implied in law which it may have owed to the bank. Thus, the bankrupt's payment of these notes was not without fair consideration. *DeAragon v. Chase Manhattan Bank*, 457 F.2d 263, 265–66 (1st Cir. 1972). This conclusion is not altered by the fact that persons other than the bankrupt benefitted from the payments. *See generally Klein v. Tabatchnick, supra*, 610 F.2d at 1047–48; *DeAragon v. Chase Manhattan Bank, supra*, 457 F.2d at 265.