**In re Alfred E. JANZ and Irene Janz, Debtors.**

**Phillip D. ARMSTRONG, Trustee of the Estates of Alfred E. Janz and Irene Janz, Plaintiff,**

v.

**Donald R. JANZ and Beverly Janz, Defendants.**

**Bankruptcy No. 86–0598.**
**Adv. No. 88–7099.**

United States Bankruptcy Court, D. North Dakota.

Sept. 10, 1991.

Sheldon Smith, Bismarck, N.D., for defendants.

Phillip D. Armstrong, Minot, N.D., trustee.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This adversary proceeding, commenced by the trustee in 1988, involves a prepetition transfer of farmland from father to son. The trustee is seeking avoidance of the transfer as a fraudulent conveyance under the Uniform Fraudulent Conveyance Act as enacted in North Dakota. N.D.Cent.Code ch. 13–02.[1] Trial was held on June 25, 1991.

From the evidence produced at trial the facts, as relevant, may be summarized as follows:

---

1. The Uniform Fraudulent Conveyance Act was repealed in 1985 and was replaced by the Uniform Fraudulent Transfer Act.

*Findings of Fact*

**1.**

The Debtors are family farmers aged 77 and 69 respectively. For a number of years they conducted a small farming operation in Ward County, North Dakota. Their son, Donald R. Janz, the defendant here, farmed with his father from 1961 until 1984 when his father retired. In 1974 Donald purchased four hundred acres of his father's land and there was apparently an understanding that he would eventually get his father's remaining farmland comprising some 4 quarters plus home.

In January 1984, the Debtors were sued on a promissory note by Burton Hutton which resulted in a May 1985 judgment against them of $211,600.00. The notice of trial in that case was issued on September 28, 1984.

**2.**

On October 24, 1984, just a month after receiving the notice of trial, the Debtors entered into a sale agreement with Donald and his wife, the co-defendant here, for 3 quarters (480 acres) of the Debtors' remaining farmland for $60,000.00 cash together with a one-third crop share for life. The purchase price was to be financed through a loan from the Federal Land Bank with the Debtors retaining a first mortgage lien on the land until the $60,000.00 was paid. Donald claims he paid the Debtors $30,000.00 using funds borrowed from Federal Land Bank and gave them a note for the balance, which remains unpaid. Although Donald said he arranged a $60,000.00 loan from Federal Land Bank and paid his father $30,000.00 from the proceeds, the evidence falls short of satisfying the court that payment actually occurred. No canceled check, no Federal Land Bank note, no bank ledger or any other similar-type document proving payment to the Debtors were introduced. The evidence does disclose, however, that Donald encumbered the land by mortgages to Peoples Bank and Trust, the last loan being made after the trustee commenced the instant fraudulent conveyance action.

Subsequent to entering into the sale agreement, a warranty deed to the four hundred eighty acres was executed by the Debtors on October 24, 1984, and recorded on December 3, 1984.

An actuary testified regarding the present value of the lifetime crop-share based upon the Debtors' life expectancy, known crop yields, target values and market prices as of December 3, 1984. Including anticipated deficiency payments the present value of the one-third crop share in 1984 ranged between $53,000.00 and $70,000.00 depending upon the variables used. Thus, the total purchase price for the four hundred eighty acres was approximately $120,000.00.

In the opinion of the only appraiser testifying, the four hundred eighty acres had a fair market value of $187,245.00 as of December 4, 1984. Donald testified that at the time of the agreement both he and his father figured the land was worth $400.00 per acre for crop land. With the transfer of the four hundred eighty acres to Donald, the Debtors were left with one quarter worth $64,000 (160 acres × 400) and their personal residence in Makoti, ND worth, according to their schedules, $30,000.00. In addition, they had the $60,000.00 note for Donald and a one-third lifetime crop share in consequence of the sale.

**3.**

The $211,600.00 Hutton judgment was never paid and the successful plaintiff in that suit was not told of the transfer to Donald. The transfer was not discovered until collection efforts led to an inspection of the recorded deeds. Upon discovering the transfer to Donald, Hutton commenced a fraudulent conveyance action in state court in July 1985, seeking to have the transfer to Donald set aside. This lawsuit remains unresolved due to subsequent bankruptcy events.

The Debtors filed for relief under Chapter 7 on November 14, 1986, and this court in response to the trustee's motion, disallowed their claimed exemption for future crop-share income and directed turnover to the trustee of all post-petition crop-share proceeds as well as turnover of any notes receivable from Donald. The $211,600.00

Hutton judgment is the only debt listed on the Debtors' schedule of liabilities.

Donald and his wife, in turn, filed a petition on February 14, 1991, seeking relief under Chapter 12. Curiously, Donald's parents, the Debtors here, are neither listed as secured or unsecured creditors in Donald's case and are not provided for in his Chapter 12 plan. In the Debtors' own Chapter 7 case, however, a $25,000.00 note receivable from Donald and his wife was listed as an asset.

## Conclusions of Law

■■■ The trustee relies upon the Uniform Fraudulent Conveyance Act as codified at N.D.Cent.Code ch. 13-02 in effect at the time of the 1984 transfer. (As previously noted, the Uniform Fraudulent Conveyance Act has since been replaced by the Uniform Fraudulent Transfer Act). 11 U.S.C. § 544(b) of the United States Bankruptcy Code permits a trustee to avoid "any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by ... a creditor holding an unsecured claim ...". Under this provision the trustee stands in the shoes of the debtor's unsecured creditors. In this case, Burton Hutton, the successful plaintiff in the state lawsuit, was an unsecured creditor of the Debtors as of December 3, 1984 [2] and as of the date of their Chapter 7 petition and the trustee therefore, may assail the 1984 transfer by means of N.D.Cent.Code ch. 13-02 to the same extent Hutton could have, had the bankruptcy not intervened.

North Dakota Century Code § 13-02-04 provides:

"Every conveyance made and every obligation incurred by a person who is or thereby will be rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

North Dakota Century Code § 13-02-07 provides:

"Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors."

Thus, while conveyances made with the actual intent to defraud are fraudulent, intent is not a proof component if the conveyance is made without fair consideration and the transferor is rendered insolvent thereby. Accordingly, a transfer perceived as fraudulent may be attacked under either a theory of constructive fraud or intentional fraud—the latter requiring a showing of intent and the former requiring a showing of inadequate consideration coupled with insolvency.

■■■ "Fair consideration" is defined in section 13-02-03 of the North Dakota Century Code as a fair equivalent or an amount that is not disproportionately small as compared to the value of the property transferred. Fair consideration has also been expressed as a reasonably equivalent value. *In re Hulm*, 738 F.2d 323 (8th Cir.1984); *see also DeAragon v. Chase Manhattan Bank*, 457 F.2d 263, 266 (1st Cir.1972). In the instant case the facts establish that the Debtors transferred property worth $187,000.00 in exchange for cash of $60,000.00 and a lifetime one-third crop share worth, at best, $70,000.00, for a total consideration of $130,000.00 leaving a shortfall of $57,000.00. The consideration agreed to was 69% of the property's fair market value and the transfer was between relatives which makes the conveyance especially subject to scrutiny. *Jahner v. Jacob*, 252 N.W.2d 1 (N.D.1977). The deal was, in this court's opinion, just too good and one which was unlikely to have occurred at arms length between unrelated parties. In essence Donald and his wife received a gift of $57,000.00, assuming the sales agreement was faithfully consummated, which it was not. In practice, Donald and his wife got an even better deal. The consideration for the land proved to be illusionary and ultimately they received the four hundred

---

**2.** Under the Uniform Fraudulent Conveyance Act the relationship of a debtor and creditor arises the moment a claim arises, whether liquidated or not. *See* N.D.Cent.Code § 13-02-01(3).

eighty acres for nothing. The conveyance was for less than a fair consideration even if they had paid the full agreed upon price.

The remaining issue and the second prong of section 13–02–04 is whether the Debtors were insolvent at the time of the transfer or were rendered insolvent by the transaction.

The Uniform Fraudulent Conveyance Act in effect at the time defines insolvency as follows:

"A person is insolvent when the present fair saleable value of his assets is less than the amount that will be required to pay his probable liabilities on his existing debts as they become absolute and matured."

N.D.Cent.Code § 13–02–02(1).

This is a fairly objective test requiring only a comparison of assets against liabilities—that is to say, a person is insolvent if he has a deficit net worth. According to the Debtors' schedules of debts and property, they had debts of $215,000.00 and assets of $61,600.00 (exclusive of the property transferred). The Debtors bridle at retrogressive use of the schedules to establish insolvency and suggest that the Debtors' financial condition at the time of the transfer was one of solvency. However, the 1986 schedules mirror what their financial condition was at the time of the transfer. The transfer left them with one quarter of farmland worth approximately $64,000.00, a personal residence worth $30,000.00, a $60,000.00 note of dubious value and a one-third crop share worth (at least to them) $70,000.00, for a total book value of $224,-000.00. Former section 13–02–02(1), however, is not unqualified in its reference to asset value and in matters of insolvency under the Uniform Fraudulent Conveyance Act, book value—*i.e.*, the value a debtor assigns to his assets is not controlling. Insolvency exists where the "saleable value" is less than liabilities. "Saleable value" is the value which can be obtained if the assets are liquidated with reasonable promptness in an arms-length transaction in an existing and non theoretical market. *E.g., In re O'Day Corp.*, 126 B.R. 370 (Bankr.Mass.1991). In this case it is highly doubtful the Debtors could have marketed either the $60,000.00 note or the one-third crop share on a timely basis for a price anywhere near their assigned book value. Doubtless, anyone interested in either of these assets would expect a severe discount based on the likelihood of future performance by Donald. Thus, the court in considering insolvency places little value on these two assets which would leave the Debtors with hard saleable assets of $94,-000.00 comprised of the remaining quarter and the house, both of which were the only assets readily marketable. Accordingly the court finds that the Debtors' financial condition at the time of the transfer met the insolvency test.

From the foregoing, the court concludes that the Debtors' transfer of four hundred eighty acres of farmland to Donald and his wife meets the elements of constructive fraud and hence, the transfer is avoidable as a fraudulent conveyance under the Uniform Fraudulent Conveyance Act made applicable by section 544(b) of the Bankruptcy Code.

Having concluded that the transfer is avoidable under a theory of constructive fraud, the court will not discuss intentional fraud except to say that when the facts of this case are weighed against the historically accepted "badges of fraud", *see generally In re Erdman*, 96 B.R. 978, 985 (Bankr. D.N.D.1988), and N.D.Cent.Code § 13–02.1–04(2), one might also infer fraudulent intent under former N.D.Cent.Code § 13–02–07.[3]

Accordingly, and for the reasons stated IT IS ORDERED that the conveyance evidenced by the warranty deed between Alfred Janz and Irene C. Janz, grantors, and Donald R. Janz and Beverly Janz, grantees, and recorded as document num-

---

**3.** It is worthwhile noting that the Eighth Circuit has recently held that pre-petition transfers on the eve of a Chapter 12 filing with an intent to hinder, delay or defraud creditors may also constitute a basis for converting the case to one under Chapter 7 per section 1208(d). *See In re Graven*, 936 F.2d 378 (8th Cir.1991) which, in the context of section 1208(d), discusses the "badges of fraud".

ber 631080 in the Office of the Register of Deeds for Ward County, North Dakota on December 3, 1984, shall be and is hereby set aside as a fraudulent conveyance. Judgment may be entered accordingly in favor of the plaintiff, Phillip D. Armstrong, Trustee of the Estates of Alfred E. Janz and Irene Janz, and against the defendants, Donald R. Janz and Beverly Janz.

SO ORDERED.